[No. 1592.]

R. H. SCHWARTZ, AS SURVIVING PARTNER OF THE FIRM
OF STOCK & SCHWARTZ, A COPARTNERSHIP, APPEL-
LANT, *v.* WILHELMINA STOCK, AND WILHEL-
MINA STOCK, AS EXECUTRIX OF THE LAST WILL
AND TESTAMENT OF WILLIAM STOCK, DECEASED,
RESPONDENTS.

APPEAL AND ERROR—PRESUMPTION OF REGULARITY OF PROCEEDINGS—SPECIAL
    FINDINGS AFTER JUDGMENT—STATUTES—FAILURE TO ASSIGN ERROR—
    EVIDENCE—PLEADING NEW CAUSE OF ACTION.—LIMITATION OF ACTION.
    1.  Though the record showed that the court refused to make certain
    specific findings on the issues made by the pleadings, such refusal will
    not constitute reversible error, in the absence of any affirmative show-
    ing in the record that the court failed or refused to make findings of
    fact as required by Comp. Laws, 3277, providing that, on the trial of
    every issue of fact by the court without a jury, its decision in writing,
    stating the facts found and the conclusions of law, shall be filed with
    the clerk within ten days after trial, since a presumption of the regu-
    larity of the proceedings exists.
2.  Under Comp. Laws, 3277, requiring the court, on the trial of every issue
    of fact without a jury, to file its decision in writing, stating the facts
    found and conclusions of law, within ten days after the trial, specific
    findings of fact, on the issues made by the pleadings, requested after
    the rendition of judgment, were properly refused, as the statute does
    not authorize such practice.
3.  It was not error for the court to invite another judge, who had not heard
    the testimony, to sit with him during the argument of a case, and to
    consult with such judge in regard to the same.
4.  In an action to recover alleged partnership property after the decease of
    an alleged partner, plaintiff's testimony authenticating books contain-
    ing the alleged partnership transactions, and also plaintiff's individual
    business accounts, was properly excluded as relating to transactions
    with a deceased person.
5.  Under Comp. Laws, 3292, prescribing that on motion for a new trial the
    statement of the action shall specify the particular errors relied on,
    and Section 3427, requiring a statement of the case annexed to the
    record for appeal to specify the particular errors, an alleged error in
    refusing to allow plaintiff to rebut, by his own testimony, the testi-
    mony of other witnesses, will not be considered, where such action of
    the court was not assigned as error.
6.  Under Comp. Laws, 3286, requiring that the point of exceptions shall be
    particularly stated, an exception to the rejection of certain evidence
    will not be considered where no point to the exception was stated.
7.  In an action to recover alleged partnership property, as the survivor of
    the partnership, where the court, after the submission of the case, set
    aside the submission, and permitted plaintiff to amend his complaint
    by stating that plaintiff owned only a certain proportion of the prop-
    erty, instead of all, such amendment stated a new cause of action, and
    hence an amended answer, setting up the statute of limitations, was
    properly allowed.

8.  An action to recover sheep alleged to have been owned jointly with defendant's testator, where the joint ownership was denied by the deceased in 1895, was barred by Comp. Laws, 3718, providing that an action for the recovery of personality must be commenced in three years, since an action of replevin could have been maintained on the denial of ownership, the property being severable.

9.  Where the record discloses a substantial conflict in the evidence, the judgment of the trial court will not be disturbed by the supreme court on appeal, as against the weight of the evidence.

APPEAL from the Fifth Judicial District Court, Humboldt County; *G. F. Talbot*, Judge.

Action by R. H. Schwartz, as surviving partner of the firm of Stock & Schwartz, against Wilhelmina Stock, as executrix of the estate of William Stock, deceased. From a judgment in favor of defendant, plaintiff appeals. **Affirmed.**

The facts sufficiently appear in the opinion.

*R. M. Clarke* and *H. Warren*, for Appellant:

I.   When two or more persons, upon an express or implied agreement, unite in a common fund their separate property, and thereafter contribute their services and money in fixed proportions to its management and control thereof, with a view to joint profit, and in the same proportion divide the profits and losses of the business, each acting and standing in relation of principals to each other in the transaction of the business, the enterprise and management of the property, as between such persons, relation of partnership is created, and is presumed to continue until a dissolution and settlement of the partnership affairs. (Civil Code N. Y. 1283; Dixon Law of Part. 1; 111 Kent, secs. 23, 26, 27; Pollock Dig. Law of Part., sec. 4, 3d ed.; Parsons on Part. 59; I Lindley on Part. 174; *Dwinel* v. *Stone*, 30 Me. 384; *Everett* v. *Chapman*, 6 Conn. 374; *Terrill* v. *Richards*, 1 Nott & McCord, 20; *Daggett* v. *Jordan*, 2 Fla. 541; *Brow's Executors* v. *Higginbotham*, 27 Am. Dec. 618; *Seabury* v. *Johnson*, 11 L. R. A. 136; *Spalding* v. *Stubbing*, 39 Am. St. R. 889; *Krusler* v. *McCants*, 53 Am. D. 713; 1 Jones on Evidence, 48; 1 Greenleaf on Evidence, 42, and authorities there cited; *Campbell* v. *Whitney*, 39 Ala. 172; *Kayser* v. *Maugham*, 6 Pac. R. 805; *Groves* v. *Tallman*, 8 Nev. 178.)

II.   Adverse possession of partnership property is no

defense, except it shall have continued long enough to raise the bar of the statutes. (19 Am. & Eng. Ency. Law, pp. 362–66; 35 Dak. 576; *Stevens* v. *Yeatman*, 19 Mo. 480; 1 Lindley on Part., note 1, p. 526; 5 Ark. 270; 1 Lindley on Part., p. 284 and note 1; 3 Cal. 347; *Krusler* v. *McCants*, 53 Am. D. 712; *Crossman* v. *Lehman*, 25 Am. R. 684; *Damer* v. *Hautfer*, 21 Am. D. 370.)

III. This action being commenced within the time prescribed by the law of this state for the commencement of civil action, and before any settlement of the partnership affairs, the defense of the statute of limitations has no application. (Comp. Laws, 3718, 3722, 3727; *Gleason* v. *White*, 34 Cal. 253; 54 Cal. 463; *Hill* v. *Haskins*, 42 Cal. 159; 9 Cal. 616; *Goldsmith* v. *Echold*, 33 Am. St. R. 97; *Sindlers* v. *Walter*, 31 Am. St. R. 353.)

IV. When a partnership is dissolved by the death of one of its members, the surviving partner is entitled to the possession of the partnership property. (*Allen* v. *Hill*, 16 Cal. 113; Gen. Laws Nev. (Bailey & Hammond), sec. 2867; Parsons on Partnership, sec. 377; 9 Cal. 616; 10 Cush. 462; *Hogle* v. *Lowe*, 12 Nev. 286; *Beck* v. *Thompson*, 22 Nev. 109; 1 Lindley on Part., star p. 664, bottom page 893, star p. 652, note 1; *Cobble* v. *Tomlinson*, 50 Ind. 550; *Arnold* v. *Haggerman*, 14 Am. St. R. 712; *Goldsmith* v. *Echold*, 33 Am. St. R. 97, and cases cited; *Parker* v. *Parker*, 99 Ala. 239.)

V. In the case of *Groves* v. *Tallman*, 8 Nev. 180, in its opinion the court says: "As between partners the ultimate facts from which a partnership is deduced are, first, the agreement, second, its execution, summed up as an executed agreement. There can be no partnership between parties, so far as they are solely concerned, without a consent thereto and fulfillment thereof. A partnership agreement may be implied, as well as expressed, that property was owned, losses shared, and profits divided in a certain ratio; uncontradicted, would prove a partnership between the parties. In the absence of an express agreement so to own, or in the face of an express agreement to the contrary, they might be susceptible of explanation. The ultimate fact to be proven between the partners is the executed agreement; that, of course, may be shown in various ways. From that proven ultimate fact,

the aggregation perhaps of many, the law draws the inference of partnership." Citing: *Dwinel* v. *Stone*, 30 Me. 384; *Everett* v. *Chapman*, 6 Conn. 347, *Terrill* v. *Richards*, 1 Nott & McCord, 20; *Daggett* v. *Jordan*, 2 Fla. 541.

VI. Lindley, in his work on Partnership (5th ed., vol. 1, pp. 178–180), says: "As partnerships often exist in this country for long terms of years without any written agreement, the absence of direct, documentary evidence of any agreement for a partnership is entitled to little weight. As between the alleged partners themselves, the evidence relied on, where no written agreement is forthcoming, is their conduct, the mode in which they have dealt with each other, and the mode of which each has, with the knowledge of the other, dealt with other people."

VII. It is an admitted fact that Stock excluded Schwartz August 10, 1895, and from that day until he suddenly died, November 25, 1898, he kept Schwartz out and refused to settle, or permitted Schwartz any hand in the management of proceeds of the business. This is an action for conversion, and could not have been maintained in his lifetime against Stock, for the reason, in his lifetime, Stock was equally entitled with the plaintiff to the possession of property and proceeds of sale, and one partner cannot maintain an action against his copartner for the delivery of personal property belonging to the partnership, or for the proceeds of sale. In the case of *Buckley* v. *Carlisle, infra,* the court says: "The jury found specially that the plaintiff and defendant were partners in reference to the subject matter of action. The mere statement of the finding is sufficient to show that the plaintiff has no right to recover." The same court, in *Miller* v. *Brigham, infra,* says it is unnecessary to go over the authorities which support this proposition. (*Buckley* v. *Carlisle*, 2 Cal. 420; *Miller* v. *Brigham*, 50 Cal. 615; *Whitesides* v. *Collin*, 7 Dana, 283.) Not being maintainable against Stock, the statute was not in motion in his lifetime as to this action or cause thereof. Stock died November 25, 1898. About this time, and not before, the defendant took possession of the property declared on, and January 28, 1899, filed an inventory as executrix, including the property as property of the estate of William Stock, deceased. This action was

commenced May 15, 1899, or less than six months after the
wrongful taking, as to these defendants. It is therefore
manifest the defense of the statute is of no avail. It may be
that counsel, in pleading the statute, take the position that,
had any kind of action been commenced by Schwartz, say for
accounting, the defense of the statute of limitations would
have, if pleaded, been a bar. For the sake of the argument
we will assume that November 25, 1898 (the day Stock died
and the extreme limit of his possession after his exclusion),
Schwartz had sued Stock for an accounting, alleging a part-
nership, and that Stock had pleaded the statute to the action
as a defense. Divesting the question of all intricacy, we will
admit that the statute of limitations is a good defense for an
account of the dealings and transactions of a partnership
which had been dissolved for more than four years. We will
go further, and admit that the exclusion of Schwartz by Stock
was a dissolution of the partnership, and set the statute in
motion. On the contrary, it will, of course, be admitted,
being the law, that the statute invoked has no application
before the exclusion; that before that time the partnership
was subsisting, and each partner enjoying and exercising all
his rights in his affairs. The dissolution occurring August
10, 1895, the action for accounting would be barred August
10, 1899, that is to say, in four years. The supposititious
action being commenced November 25, 1898, was not within
the bar, and the defense would have availed Stock nothing.
The fact that Stock died November 25, 1898, does not aid
this defendant, as the statute in such cases is extended to
one year after the issuance of letters testamentary, or admin-
istration, which in this case were granted January 28, 1899.
(Comp. Laws, 2722, 3727; *White* v. *Conroy*, 66 Cal. 383.) The
cause of action in this case in truth arose at the time of the
unlawful taking; but, however viewed, it will be seen that
the statute of limitations has no application to these cases,
and the defense is unavailing.

VIII. The further plea, to wit: That ever since August
10, 1895, to the time of his death, Stock excluded Schwartz,
is neither an equitable or legal defense, unless the exclusion
contained continued long enough to raise the bar of the

statute of limitations. The exclusion, at the most, amounted
only to a dissolution; the partnership still continued,
restricted only in the authority of the parties to bind each
other in a new contract. (1 Lindley on Partnership, note 1,
p. 526.) Stock acquired no title by exclusion, nor was he
freed from the obligation to account (5 Ark. 270), each hav-
ing an equitable lien on the partnership property for the pur-
pose of having it applied in discharge of the partnership
debts, if any; if none, for the payment of what might be due
to either respectively after deducting what might be due from
them as partners to the firm (2 Lindley on Part., and author-
ities cited in note 1, p. 284; 3 Cal. 347.)

IX. Nor did the possession by Stock of the partnership
property sever the joint estate, or vest in him a separate
interest. After dissolution, *inter vives*, mutual agency con-
tinues with some restriction until the affairs of the partner-
ship are administered. (*Krusler* v. *McCants*, 53 Am. Dec.
712; *Crossman* v. *Lehman*, 25 Am. R. 684; *Donner* v. *Stauffer*,
21 Am. Dec. 370.)

X. The court erred in denying the right of plaintiff by
his own testimony to rebut the testimony of Harvey and
Stevens. The exclusion is admitted, but the denial of inter-
est is not admitted, neither is it the truth. Harvey's com-
plete testimony refutes this, even taken most strongly against
the plaintiff. But Harvey and Stevens both testified that, in
the quarrel between Stock and Schwartz, Stock denied the
interest of Schwartz. The denial is of no greater conse-
quence, if true, than the admitted exclusion, but it was not
a transaction with the deceased person in any sense. The
question was on the fact whether or not the denial was made
as testified to, and plaintiff was a competent witness in rebut-
tal of the testimony offered. Schwartz being the survivor of
a partnership and suing in that capacity, is not in law within
application of Section 379 of the act of civil procedure.
The action is brought for the benefit of the firm of Stock &
Schwartz, and not for the benefit of Schwartz personally.
The fact that the widow of the deceased partner is defendant,
either personally or as executrix, in no sense affects the
question. Schwartz, as the surviving partner, was a com-

134    SCHWARTZ *v.* STOCK.    [26th Nev.

Argument for Appellant.

petent witness under the common law, and is not within the class designated as incompetent under our statute. (2 Greenleaf, 15th ed. sec. 486; 13 Nev. 279.)

*N. Soderberg*, also for Appellant:

I. The court erred prejudicially to appellant in refusing his requests for findings. (Stats. 1893, 116; *Warren* v. *Quill*, 9 Nev. 259, 264; *Welland* v. *Williams*, 21 Nev. 230, 234; *Speegle* v. *Leese*, 51 Cal. 415, 28 Cal. 304; 35 Cal. 191; 62 Cal. 515; 19 Cal. 109; 42 Cal. 386.)

II. The evidence established a copartnership relation between Stock and Schwartz as to the property in controversy. But, even if it had been true that they owned it in a different joint relation, plaintiff was entitled to recover. No statute of limitations was pleaded until several weeks after the trial, and after the arguments. The attempted plea of "prescription" was nugatory. Courts administer relief, whether legal or equitable, as required by the facts of each case. A plaintiff can be sent out of court only when upon his facts he is entitled to no relief either in law or in equity. (*Crain* v. *Aldrich*, 38 Cal. 520; 20 N. Y. 64.)

III. Where several persons carry on the same business together, they are presumed to be partners. And for stronger reason, when several persons participate in the profits of a business a partnership is presumed. Upon this principle the partnership agreement and relation between Stock and Schwartz was clearly established by the evidence. And there is no countervailing evidence in the record worthy of mention. (1 Burr W. Jones, Law of Evidence, 48; *McMullan* v. *Mackenzie*, 2 G. Green (Ia.) 368; *Forbes* v. *Davidson*, 11 Vt. 660.)

IV. A mere joint ownership in personal property, it is true, does not constitute a partnership. But Stock and Schwartz not only owned the property jointly, but they carried on the business of sheep-raising in the partnership name and style of Stock & Schwartz, conducting themselves as partners, which raises a presumption of a partnership. (17 Am. & Eng. Ency. Law, p. 912.) The question whether the sheep were or were not copartnership property is "one of the intention of the partners to be deduced from their

acts and all the circumstances of the case." (17 Am. & Eng. Ency. Law, 935–36.)

V.   Schwartz's supplementary oath was competent for authenticating and laying foundation for introduction of the copartnership books. (*Jones* v. *Gammans*, 11 Nev. 249; *Buckley* v. *Buckley*, 12 Nev. 442; 16 Nev. 180; *Roch* v. *Ware*, 71 Cal. 375; *Landis* v. *Turner*, 14 Cal. 573; *Strickland* v. *Brazee*, 27 Ill. App. 595; *Lewis* v. *McGinnis*, 30 Fla. 419; *Dysart* v. *Furrar*, 90 Iowa, 59.)

VI.   Presentation of plaintiff's demand to executrix before bringing action was unnecessary.   Any property in the hands of the executrix, which is not a legal asset, may be recovered without presenting a claim against the estate. (*People* v. *Houghteling*, 7 Cal. 348, 352; *Gunter* v. *James*, 9 Cal. 643; *In re Williams' Estate*, 32 Pac. Rep. 242, bottom of page; *Hardin* v. *Sinclaire*, 115 Cal. 460; *Eldred* v. *Warner*, 6 Ariz. 194–5; *Stuttmeister* v. *Superior Court*, 72 Cal. 489; *Pardin* v. *Archeo*, 7 So. Dak. 54.)

VII.   The court abused its discretion in permitting defendant, after the trial and arguments, to plead the statute of limitations.   In deference to the suggestion of the court, and to meet the erroneous opinion of the court that the testimony showed that Stock and Schwartz were cotenants in the sheep, plaintiff amended his complaint.   After this amendment, "in furtherance of justice," the court, without any showing by affidavit or otherwise, permitted defendant to plead that the demand of plaintiff was barred by lapse of time.   Having announced that plaintiff was equitably entitled to recover, plaintiff's recovery was prevented by pleading the three-years statute of limitations, and this without any evidence in support of the pleas.   All this was erroneous.   Amendments to pleadings are only allowable in furtherance of justice, never for the purpose of defeating it. (*Heegaard* v. *Dacota La. T. Co.*, 3 So. Dak. 569, 573–77; *Cook* v. *Spears*, 2 Cal. 409; *Fielding* v. *Fitzgerald*, 130 Ill. 437, 440–41; *Steward* v. *Sander*, 16 Cal. 372; *Robbins* v. *Treadway*, 19 Am. Dec. 152; *Newall* v. *Hussey*, 36 Am. Dec. 717; *Todman* v. *Purdy*, 5 Nev. 238; *Bullion M. Co.* v. *Croesus M. Co.*, 2 Nev. 168; *Tucker* v. *Mayor*, 4 Nev. 30.)

VIII.   The conduct of the acting judge, in permitting Mr.

Curler, during the argument, to act as "advisory judge," was a great irregularity and reversible error. Mr. Curler was neither *de facto* nor *de jure* a judge in the cause. He was a stranger, and he manifestly participated in the decision of the case to the injury of appellant. The power and duties of a judge are strictly personal in their nature, and are to be performed by such officer alone. (17 Am. & Eng. Ency. Law, 2d ed. p. 717; *State* v. *Noble*, 113 Ind. 362, 363, 364, 369; *Brittan* v. *Fox*, 39 Ind. 369; *McClure* v. *State*, 77 Ind. 287; *Van Slyke's Case*, 39 Wis. 390; *Corgor* v. *Fee*, 119 Ind. 536; *Brownlee* v. *Hewitt*, 1 Mo. App. 360.)

*A. E. Cheney* and *Frank X. Murphy*, for Respondents:

I. The real and only substantial questions involved were: (1) Was there a copartnership between plaintiff and William Stock, as alleged? (2) Did the defendant as executrix convert the property to her own use or wrongfully detain it from the plaintiff? The value of the property was not questioned.

II. The first case, No. 1591, is an action for damages for the conversion of 1,800 mutton sheep and 3,200 lambs.

III. As the very substance of the action is that the defendant, as executrix, converted the property of the plaintiff, the failure to prove any conversion by her as executrix ends this case.

IV. It is equally essential to allege and prove the conversion, whether the action is founded upon a claim as surviving partner or joint owner, and, as no conversion by this defendant was proven, both claims must fail.

V. It is also plain that for R. H. Schwartz to recover, in either capacity, for a conversion by William Stock, before an action thereon can be maintained against his estate, that claim must have been presented to the executrix for allowance.

VI. The second action is in replevin to recover a band of 5,000 sheep and their increase. Although the engrossed and amended complaint sets forth the share or interest claimed by the plaintiff in the copartnership, he still seeks to recover the whole band and their increase. If the plaintiff is the surviving partner, he probably is entitled to recover the possession of the partnership property from the representative

of the deceased partner. But, if he is simply a joint owner or tenant in common, he certainly is no more entitled to the exclusive possession of the whole than his cotenant, and cannot maintain replevin for the whole of the common property. (Freeman on Cotenancy, 2d ed. 289; *Alford* v. *Bradeen,* 1 Nev. 229; *Hewlett* v. *Owens,* 50 Cal. 474; *Balch* v. *Jones,* 61 Cal. 234.)

VII. We contend that the court was wrong in allowing the amendment inserting the claim as joint owner, under an application to make the pleadings conform to the proof, because the amendment set up a new and distinct cause of action. (1 Ency. Pl. & Pr. 583, 569; *Allen* v. *Brooks,* 60 N. W. 253; *Arnold* v. *Angell,* 62 N. Y. 508; *Freeman* v. *Grant,* 132 N. Y. 22; *Marshall* v. *Golden Fleece Mg. Co.,* 16 Nev. 156.) "If an amendment is allowed in favor of one party to a suit, and a corresponding amendment is rendered thereby necessary on the part of the adverse party, a refusal to allow the latter would be appealable." (*Smith* v. *Smith,* 31 S. E. 471; *McCausland* v. *Ralston,* 12 Nev. 202.) "But if the plaintiff amend his declaration, the defendant may plead the statute anew." (*State* v. *Green,* 4 Gill & J. 381; *Harriott* v. *Wells,* 9 Bosw. (N. Y.) 631.) The doctrine that the plea of the statute of limitations is an unconscionable defense, no longer prevails. (1 Ency. Pl. & Pr. 520; *Wood* v. *Carpenter,* 101 U. S. 135; *Mitchell* v. *Campbell,* 13 Pac. 190.) All legal defenses stand upon an equal footing. (1 Ency. Pl. & Pr. 520, note 3.) Amendments are allowed or refused in the sound discretion of the court, and such action is never disturbed, except where there has been a palpable abuse of that discretion. (1 Ency. Pl. & Pr. 524–527.) When a new cause of action is brought in by way of amendment, the statute runs until the amendment is made and filed. (*Holmes* v. *Trout,* 7 Pet. 171; *Anderson* v. *Mayers,* 50 Cal. 525; *Aitkinson* v. *Amador C. Co.,* 53 Cal. 102; *Nugent* v. *Adsit,* 93 Mich. 462, 53 N. W. 620.)

VIII. An action for conversion probably is governed by the four-year clause (Section 18 of the statute of limitations), and the four years had no more than expired before this amendment was allowed. (Comp. Laws, 3722.)

IX. An action in replevin, or for the recovery of specific

personal property, is barred in three years. (Comp. Laws, 3718.)

X. If it is contended that sheep are property of equal value and divisible by numbers, so that each cotenant may claim a division by numbers, then the exclusive appropriation of the whole flock in August, 1895, constituted a conversion and an unlawful withholding, and a right of action commenced then, which was never asserted until the engrossed complaint was filed, more than four years thereafter. (Freeman on Cotenancy, 2d. ed. 319.) It is therefore submitted that a right of action as joint owner of a part of these sheep arose, if at all, against William Stock when he took and asserted exclusive control and possession of the whole band in August, 1895, and wholly excluded R. H. Schwartz therefrom; that action was not commenced until the engrossed complaints were filed February 9, 1900; that the court properly allowed the defense of the statute of limitations to be pleaded, and that, under the facts as stipulated and proven, those pleas constitute a perfect defense to each action, and require that the judgment in each case be affirmed.

XI. No action as joint owner can be maintained against this defendant, because no claim was ever presented against the estate which she represents.

XII. None of the errors assigned, respecting the rulings of the court upon admission or exclusion of evidence, can be considered, because no valid exceptions were taken to such rulings. (Comp. Laws, 3286-7; *Sharon* v. *Minnock*, 6 Nev. 382; *Gooch* v. *Sullivan*, 13 Nev. 81; *Rosina* v. *Trowbridge*, 20 Nev. 118; *McGurn* v. *McInnis*, 24 Nev. 372; *McNamee* v. *Nesbitt*, 24 Nev. 400; *Lewis* v. *Hyams*, 25 Nev. 242; *Paul* v. *Cragnaz*, 25 Nev. 293.) The statement shall specify the particular errors upon which the party will rely, and, if no specifications be made, the statement shall be disregarded. (Comp. Laws, 3427; *Corbett* v. *Job*, 5 Nev. 205; *Sherman* v. *Shaw*, 9 Nev. 151; *Roberts* v. *Webster*, 57 Pac. 180.)

XIII. The failure of the court to make findings was not erroneous or prejudicial. No sufficient request was made, nor any valid exception reserved. "In cases tried by a court without a jury, no judgment shall be reversed for want of a finding, * * * unless exceptions be made in the court

below to the want of a finding; * * * *provided*, such exceptions to * * * want of a finding shall be filed in the court within five days after the making of the * * * decision to which exception is made." (Comp. Laws, 3858.) The exceptions covered by the provisions of the practice act are those made to some action taken by the court, at any "time from the calling of the action for trial to the rendering of the verdict or decision." (Comp. Laws, 3285.) And it is only "errors of law occurring at the trial" that is ground for a new trial. (Comp. Laws, 3290.) This action of the court, of which complaint is made, occurred after trial and decision, and is not a ground for a new trial, which can be reached upon this motion, because the ruling was made after the decision of the cause. Neither does it appear that the request to find was entered in the minutes of the court at the time of the submission of the cause, and it was not error to refuse to find. (*City of San José* v. *Shaw*, 45 Cal. 178.) "But no exception shall be regarded on a motion for a new trial or on appeal, unless the exception be material, and affect the substantial rights of the parties." (Comp. Laws, 3285, 3166.) "The findings of the court shall be statements of the ultimate facts only, and not of the probative facts." (8 Ency. Pl. & Pr. 941; *Perkins* v. *Sierra Nevada S. M. Co.*, 10 Nev. 413.) "If the request is for several findings, and the court refuses them as a whole, a general exception to the refusal is insufficient, if any of the requested findings was properly denied." (8 Ency. Pl. & Pr. 278.)

XIV.  R. H. Schwartz was not competent to testify as to any fact which transpired before the death of William Stock. "No party shall be allowed to testify * * * when the facts to be proven transpired before the death of such deceased person." (Comp. Laws, 3474.) "As to such transactions, neither party is allowed to testify." (*Gage* v. *Phillips*, 21 N. Y. 155–156.) It makes the party incompetent to testify, and does not go to the competency of the evidence itself. (*McDonald* v. *Young*, 81 N. W. 155; *Burdick* v. *Raymond*, 77 N. W. 833; *McHigh* v. *O'Dowd's Est.*, 49 N. W. 216.) The statutory prohibition includes proof of transactions with deceased persons by facts and circumstances which indirectly or by deduction lead to and prove such transactions as well as the

direct proof of the transaction itself. (*Dooley* v. *Bacon*, 70 N. Y. 34; *Koehler* v. *Addler*, 91 N. Y. 657; *Cliff* v. *Moses*, 112 N. Y. 431; *Mills* v. *Davis*, 113 N. Y. 243.) The statute covers all cases coming within its terms. "The safe guide and decisive test is found in the inquiry: *Were the deceased alive, could he testify to the same matters?*" (*Perkins* v. *Perkins*, 58 N. H. 405, 38 Atl. 1049.) "The words of exclusion are as comprehensive as language can express." (*Holcomb* v. *Holcomb*, 95 N. Y. 325.)

XV. A person claiming to be a partner cannot testify that a deceased person was his partner in an action against his representatives, nor can he establish that fact by his own testimony indirectly, and by verifying the correctness of his accounts, identifying the signatures of letters, receipts, bills of sale or other documentary evidence, nor that the deceased made an entry in a book, show such partnership. (*Adams* v. *Morrison*, 113 N. Y. 152, 20 N. E. 829; *Charlotte Oil Co.* v. *Ripley*, 123 N. C. 656, 31 S. E. 879; *Lyon* v. *Pender*, 118 N. C. 150, 24 S. E. 744; *McCorkendale* v. *McCorkendale*, 87 N. W. 754; *Smith* v. *Perry*, 73 N. W. 282; *Henderson* v. *Henderson*, 98 Ga. 147, 26 S. E. 482; *Berry* v. *Stevens*, 69 Me. 290; 3 Jones on Evidence, sec. 794, p. 1732; *Cooper* v. *Wood*, 27 Pac. 884; Underhill on Evidence, p. 441; *Dennison* v. *Dennison*, 35 Md. 361; *Adams* v. *Edwards*, 115 Pa. St. 211; *Downie* v. *Andrus*, 43 Mich. 65; *Silver* v. *Wooster*, 73 Me. 322; *Kimball* v. *Kimball*, 16 Mich. 211; *Rice* v. *Martin*, 7 Saw. 337, 346; *Peck* v. *McKean*, 45 Iowa, 18; *Wilson* v. *Wilson*, 52 Iowa, 42; *Kurd* v. *Brown*, 49 S. W. 999; *Sabre* v. *Smith*, 62 N. H. 663; *Howard* v. *Zinkelman*, 14 S. W. 59.) Entries made by Schwartz in his own book are not competent to prove that Stock was his partner. (*Robbins* v. *Warde*, 111 Mass. 244; *McNamara* v. *Draft*, 40 Iowa, 413; *Abbott* v. *Pearson*, 130 Mass. 191.)

XVI. A partnership is created solely by the voluntary contract of the parties, which supplies the rules of its government. It never arises by operation of law. (*Groves* v. *Tallman*, 8 Nev. 178, 180; Story on Partnership, 7th ed. 3, 5, 6; *Sargent* v. *Collins*, 3 Nev. 260, 264; Freeman on Cotenancy, sec. 111, pp. 177-8; *Hallenback* v. *Rodgers*, 40 Atl. 516.) "It is requisite that they shall share something by virtue of

an agreement to that effect." (1 Lindley on Partnership, 2d ed. pp. 1, 2.) "The intention of one party alone cannot create a partnership without the assent of the other." (*Phillips* v. *Phillips*, 49 Ill. 437; *Porter* v. *McClure*, 15 Wend. 189.) "No man can be a partner of others without their consent." (*Channel* v. *Fassitt*, 16 Ohio, 169.) "Persons cannot be made to assume the relationship of partners, as between themselves, when their purpose is that no partnership exists." (*London Assurance Co.* v. *Drennan*, 116 U. S. 472.) "It is essential to the existence of every contract that there should be reciprocal assent to a definite proposition." (*Hillyer* v. *Overman S. M. Co.*, 6 Nev. 51; *Morrill* v. *Tehama M. & M. Co.*, 10 Nev. 125.) "Actual intention is necessary to constitute a partnership *inter esse*. There must be a joint undertaking to share in the profits and losses. Each party must, by agreement in some way, participate in the losses as well as the profits." (*Wheeler* v. *Farmer*, 33 Colo. 213.)

*H. Warren* and *N. Soderberg*, for Appellant, in reply:

I. As to what constitutes proof of copartnership *inter esse:* Abbott's Trial Evidence, pp. 207, 209, 226, 227, paragraphs 11, 14, 47; *Robinson* v. *Greene, Admr.*, 5 Harring. (Del.) 115; *Tuck* v. *Barbour*, 64 Penn. St. 120, 121; *Lirtner* v. *Milliken*, 47 Ill. 178, 179.

II. As to the competency of Schwartz to testify concerning the partnership books: *Higgs* v. *Hanson*, 13 Nev. 356; Abbott's Trial Ev. p. 205, par. 4.

III. That Mrs. Stock is liable in her representative capacity: 11 Am. & Eng. Ency. Law, 2d ed. 942, 944; *Simpson* v. *Snyder*, 54 Iowa; *De Valengin* v. *Duffy*, 14 Pet. U. S. 261.

IV. That one cotenant may maintain replevin against another for sheep: *Piazzek* v. *White*, 33 Am. St. Rep. 211.

[The foregoing briefs were filed in Cases No. 1591 and No. 1592.]

By the Court, MASSEY, C. J.:

This action was instituted by the appellant on the 15th day of May, 1899, to recover the possession of 5,000 head of sheep, of the value of $15,000. He bases his right to recover

as the surviving partner of the firm of Stock & Schwartz, of which firm the testator, William Stock, died on the 25th day of November, 1898.

The appellant alleges in his complaint, among other matters, that he and the said decedent, on the .......... day of June, 1890, entered into an agreement of copartnership to engage in, and under said agreement did engage in, the business of buying, selling, and raising sheep under the firm name of Stock & Schwartz, and were so engaged at the time of the death of said Stock; that at the time of the death of said Stock he and appellant were the owners in copartnership of the sheep in controversy; that the respondent, in 1899, wrongfully took, and ever since unlawfully withholds and detains, the said property from the appellant.

The answer denies the partnership and all other material averments of the complaint. It affirmatively shows that Wilhelmina Stock was, at the time of his death, the sole and exclusive owner of the property in controversy, and that she, as executrix, was, from the time of her appointment, the owner, and entitled to the exclusive possession, of the property. She further denied, by plea, that the appellant had any right, title, or interest in or to the property in controversy as an individual surviving partner, or in any capacity whatever. Upon the trial, judgment was for the respondent.

The appeal is taken from the judgment and the order denying the motion for a new trial.

It is claimed by the appellant that the court erred in refusing to make findings of fact, and in refusing to make findings of fact as requested by him.

It appears from the record that after judgment the appellant requested certain specific findings upon the issues made by the pleadings, which request was refused, and an exception taken to the action of the court in so ruling.

It does not appear from the record why this request was refused, neither does it appear from the exception taken or otherwise how or in what manner the appellant was injured by this action of the court.

By Section 182 of the civil practice act (Comp. Laws, 3277) it is provided that, upon the trial of every issue of fact by the court when sitting without a jury, its decision shall be ren-

dered in writing by the court or judge who tried the cause, and filed with the clerk within ten days after the trial. In rendering such decision the court or judge shall briefly state the facts found and the conclusions of law reached, and within a specified time the attorney for the prevailing party shall draw complete findings of fact and conclusions of law, and present them to the judge for his signature, and judgment shall be entered in accordance therewith.

Whether or not failure to comply with the requirements of this section would invalidate the judgment is not before us in this case. The record does not affirmatively show that the court either failed or refused to make the findings of fact required by the section.

This court will not indulge in presumptions against the regularity of the proceedings of the trial court. It has repeatedly held that all presumptions favor the regularity of the proceedings of that court, and that where error is alleged it must be affirmatively shown by the record before this court will reverse an order or judgment of the lower court. (*Champion* v. *Sessions*, 2 Nev. 271; *Nosler* v. *Haynes*, Id. 53; *Lady Bryan Gold & Silver Min. Co.* v. *Lady Bryan Min. Co.*, 4 Nev. 414; *Mitchell* v. *Bromberger*, 2 Nev. 345; *Allison* v. *Hagan*, 12 Nev. 38; *Nesbitt* v. *Chisholm*, 16 Nev. 39; *Leete* v. *Sutherland*, 20 Nev. 71, 15 Pac. 472.)

The fact that the court refused to find as requested does not show that the court did not find at all. The findings of the court are no part of the judgment roll (Comp. Laws, 3300), and can only be presented, as repeatedly held, on appeal, by the statement. The fact that there are no findings in the record does not raise a presumption that no findings were made, there being no showing otherwise by the record.

An unanswerable reason exists which justified the trial court in refusing to make the findings of fact after judgment, as requested by the appellant. The section of the practice act above quoted does not authorize any such practice, and we have been unable to find any other provision which does. If the court did not make the findings required by the section quoted, or had made defective findings, the appellant had ample remedy, under the requirements of another section, to correct the action of the court in the premises, and, in case

of refusal to make the correction, the matter could have been, by following the plain directions of the statute, presented to us for review.

Section 2 of an act to regulate appeals in the courts of justice in this state (Comp. Laws, 3858) expressly prescribes the method of presenting such matters to the appellate court. It provides that, in cases tried by the court without a jury, no judgment shall be reversed for want of findings or for a defective finding of fact, unless exceptions be made in the court below to the finding or to the want of finding, and, in case of defective finding, the particular defects shall be particularly and specifically designated; and, upon failure of the court below to remedy the alleged error, the party moving shall be entitled to his exceptions, and the same shall be settled by the judge as in other cases. It further prescribed the time within which such exceptions shall be filed.

The record does not show that there was a want of finding or defective finding; neither does it show that any of the steps required by the statute were taken to correct any want of findings or defective findings, or that any exception or other action was taken in the matter further than is indicated above. This matter has been before this court, considered, and determined, and, under the cases presented and decided, we must hold that the appellant's claim is without merit. (*McClusky* v. *Gerhauser*, 2 Nev. 52; *Whitmore* v. *Shiverick*, 3 Nev. 312; *State* v. *Manhattan Co.*, 4 Nev. 336; *Warren* v. *Quill*, 9 Nev. 263; *Welland* v. *Williams*, 21 Nev. 230; 29 Pac. 403.)

It appears that, after the testimony had been taken by the district court, Judge Talbot presiding, at Winnemucca, it was stipulated by counsel, as a matter of convenience, that the oral argument should be heard at Reno, Washoe county, Nevada; that, pursuant to such agreement, argument was had at the court room of the district court for that county on the 16th and 17th days of January, 1900.

During the argument, or at least during a part of the argument, by the courtesy and upon the invitation of Judge Talbot, Judge Curler sat with Judge Talbot, and was consulted by him regarding the case. No objection was made or interposed at the time to this action. Subsequently this fact

was presented on motion for a new trial by the affidavit of counsel, and the refusal of the court to grant a new trial because of this alleged misconduct of Judge Talbot or Judge Curler, the record not distinctly showing which of the judges was guilty of the misconduct, is assigned as error.

The record shows that the judgment was rendered by the court, Judge Talbot presiding, in Winnemucca, in the following March. It is hardly necessary to discuss this matter. The rule relied upon and the authorities cited have no application whatever to the facts of this record. The text of 17 Am. & Eng. Enc. Law (2d ed.), p. 717, cited, no doubt states a correct rule of law. A judge has no power to delegate his authority to act. It does not appear that the judge in this action delegated his power, or attempted to delegate his power, to any person. He acted in the premises.

The cases cited are in harmony with the text. In *Van Slyke* v. *Insurance Co.*, 39 Wis. 390, 20 Am. Rep. 50, it was held that on an appeal from a judgment signed by the clerk, where the record shows that on the trial in the court below the judge of that court left the bench, and that his place was assumed by another person, a member of the bar of the court, but not a judge, who tried the cause, and upon whose consideration the judgment was rendered, such judgment was void.

In *Britton* v. *Fox*, 39 Ind. 371, it was held that a judge could not, because he was "weary," orally authorize an attorney to receive a verdict during his absence.

The other cases cited are to the same effect, and require no further consideration.

During the progress of the trial the appellant was sworn, and offered himself as a witness to testify in support of the issues made in his behalf. The facts to be proven by the testimony of the appellant are set out in the record. He offered to show by his own testimony that he kept a set of books, consisting of a daybook of original entry, a journal, and a ledger, in which all transactions relating to the milling, merchandising, and sheep business were recorded at the time they occurred; that these books were true and correct, and contained a partnership account between the witness and William Stock, deceased, showing all the transactions in con-

nection with a certain ranch and the sheep in controversy; that the books and the transactions therein extend over and cover a period from 1890 to about 1896; that he (the witness) furnished the decedent in his lifetime bills of these different accounts taken from the books. The offer contains other facts in support of appellant's case not necessary to be stated.

It should also be stated here, as an admitted fact, that the appellant and William Stock were partners in the milling business; also that R. H. Schwartz carried on in his individual name a mercantile business. An objection by the respondent, based upon the incompetency of the witness to testify to these facts under the provisions of Section 379 of the civil act (Comp. Laws, 3474), was sustained, and this action of the court is assigned as error. The appellant insists that he was a competent witness for the purpose of authenticating his books, and testifying to the correctness of the transactions therein contained.

Section 379 of our practice act, *supra*, has been repeatedly changed by amendment. At this time, and at the time of this trial, that part of the section material to the question presented is as follows: "No person shall be allowed to testify under the provisions of Sections 376 and 377 when the other party to the transaction is dead, or when the opposite party to the action, or the person for whose immediate benefit the action or proceeding is prosecuted or defended is the representative of a deceased person, when the facts to be proven transpired before the death of such deceased person. * * *" (Comp. Laws, 3474.)

The principal issue made by the pleadings involved the existence of the partnership. The appellant alleged the existence of the partnership, and the respondent denied it. The appellant was not seeking an accounting, and there was no question involving partnership accounts. He was seeking to establish the existence of the alleged partnership, that he might recover the possession of the partnership property as the surviving member of the firm. While copartnership books might be competent for the purpose of establishing the existence of a partnership, these books were not claimed in the record to be partnership books. It was not admitted, or otherwise shown, that they were partnership books. In fact, the

offer discloses that they were kept by the appellant, and contained the transaction of his individual mercantile business and the copartnership milling business. If the record of transactions with the deceased in his lifetime, entered by the appellant in these books, was competent for the purpose of establishing the existence of a partnership, when authenticated by the oath of the appellant, then why was not appellant competent to testify directly to the transactions without regard to the books? If he could by his testimony render the transactions shown by the books material to the issue, then he was competent to testify in this action to the transactions had with Stock in his lifetime.

If such were the rule of the statute, we can see no reason why he would not be competent to testify to the terms and conditions of the agreement of copartnership. It seems to us that the plain language of the statute quoted closed the mouth of the appellant, as death had sealed the lips of Stock.

The appellant has cited a number of cases decided by this court in support of his contention, but an examination of those cases shows that they can have no application to the facts of this case.

In the case of *Buckley* v. *Buckley*, 12 Nev. 442, and 16 Nev. 180, cited as an authority in support of appellant's contention, no such question as the one presented by this record was presented and decided. That case was brought by the appellant to recover the possession of certain sheep of which he alleged he was the owner. The respondent was the surviving widow, as in this case, and the administratrix of her deceased husband's estate. She claimed, among other matters, that the sheep belonged to her deceased husband, and that she held them as administratrix of his estate, as a part thereof. It appears that the books of Henry A. Buckley, the deceased husband, were offered for a purpose, after the respondent, his widow and legal representative, had testified to their correctness. The competency of the widow to testify to the correctness of the book, or to any other fact under the statute, was neither presented nor decided by the court.

The case of *Jones, Admr.*, v. *Gammans*, 11 Nev. 249, is not in point. In that case Jones, the administrator, sought to recover a judgment against Gammans upon an account for

services, etc. Gammans, by answer, pleaded, among other matters, a counterclaim. On the trial Gammans offered his books of account in support of some of the items of his counterclaim, and supported the books by his own testimony. One of the objections made to the book was that Gammans could not testify to this matter after the death of the administrator's intestate, and was, in effect, permitting Gammans to testify to matters which transpired between him and the deceased before death, and in the lifetime of the deceased.

The objection made presents the question in the case at bar, but the court did not and was not required to pass upon the objection. It appears that the trial court did not rule upon the objection at the time it was made, but reserved its ruling, and afterwards announced, as one of its findings, that the book had been improperly kept, and that it appeared from the book itself that it was not a proper book to be admitted as showing the state of the accounts between Gammans and the deceased, and for these reasons excluded it. On the appeal the respondent abandoned his objection based upon the competency of Gammans, and sought to sustain the action of the trial court for the reasons given by it in the findings.

Justice Beatty, discussing the matter, says: "It must stand or fall upon the correctness or incorrectness of the ruling as it was originally made and announced, and, as to that question, the whole ground seems to be covered by the admission in his argument by counsel for respondent that 'the book was before the court sitting as a jury, by consent of plaintiff.' If it was evidence before the court by consent of plaintiff, it was certainly error in the court to treat it as not evidence." It will therefore be seen that this court did not pass upon the competency of the witness, as that objection was expressly waived, and the case was reversed upon the exclusion of the book, for the reason contained in the findings of the trial court.

Nor does the case of *Crane, et al.,* v. *Gloster,* 13 Nev. 279, cited, support the appellant's contention. That action was brought by the surviving partners of one Hayes, deceased, against Gloster. In support of his counterclaim, Gloster was permitted to testify that Hayes, the deceased partner,

had in his lifetime employed him to perform certain services at a fixed salary and commission, for which there was due a considerable sum. The discussion by the court of the objection made to the competency of Gloster to testify, under the provisions of Section 379, Civ. Prac. Act, as it then stood, makes a very clear distinction between that case and the case at bar, based upon the difference between the statute as it then was and now is.

That part of Section 379, pertinent to the question, at the time the case of *Crane* v. *Gloster* was decided, is as follows: "No person shall be allowed to testify under the provisions of Section 377 where the other party to the transaction, or opposite party in action, or the party for whose immediate benefit the action or proceeding is prosecuted or defended, is the representative of a deceased person, when the facts to be proved transpired before the death of such deceased person. *  *  *." (Stats. 1877, 160.)

Crane, *et al.*, contended that they were the representatives of the deceased partner, Hayes, within the meaning of Section 379, above quoted. Therefore they claimed it was error to permit Gloster to testify. The court held that they, as surviving partners, were not the representatives of Hayes, within the meaning of that statute, and therefore Gloster was not incompetent under the provisions of said section, for the reason that the legislature *ex industria* omitted the words "is dead," which should have followed the phrase, "other party to the transaction."

The court severely criticised the section as it then stood, and we presume, as the result of this criticism, the first session of the legislature after the decision was announced amended it by inserting the omitted words; thereby making the provisions of the section substantially as it was at the time when the case of *Roney* v. *Buckland*, 4 Nev. 59, was before the court under the territorial act, and substantially as the law is at the present time.

A large number of cases decided by other courts, under statutes similar to ours, have been cited by the respondent in support of the action of the trial court, but we do not deem it necessary to criticize or refer to them, as the clear, plain language of the statute is sufficient to justify the action

of the trial court in holding that the appellant was incompetent to testify.

It is also claimed in appellant's brief that the court erred in refusing to allow him to rebut by his own testimony the testimony of certain witnesses who were sworn and testified in the case. It is a sufficient answer to this contention to say that the action of the court in the premises is not assigned as error, and under the rule of the statute is not before this court. (Comp. Laws, 3292, 3427; *Corbett* v. *Job*, 5 Nev. 205; *Sherman* v. *Shaw*, 9 Nev. 151; *Earles* v. *Gilhan*, 20 Nev. 49, 14 Pac. 588; *Roberts* v. *Webster*, 25 Nev. 94, 57 Pac. 180.)

During the progress of the trial the appellant offered a chattel mortgage and the assignment thereof. The mortgage was executed by one Rickard, the lessee of the sheep, under a contract with William Stock, deceased, upon his interest in the sheep acquired thereunder, to one Martha Clarke. The assignment of the mortgage was made by M. S. Bonnifield, the attorney of the mortgagee. Objection to the introduction of the mortgage and the assignment thereof was sustained, and the appellant excepted, but failed to state any point to his exception.

Our statute provides that "the point of the exception shall be particularly stated," and this court has repeatedly held that the record must show a compliance with the requirements of this provision; otherwise, it will not consider the action of the trial court under the assignment. (Comp. Laws, 3286; *Sharon* v. *Minnock*, 6 Nev. 382; *Gooch* v. *Sullivan*, 13 Nev. 81; *Lightle* v. *Berning*, 15 Nev. 389; *Rosina* v. *Trowbridge*, 20 Nev. 118, 17 Pac. 751; *McGurn* v. *McInnis*, 24 Nev. 372, 55 Pac. 304, 56 Pac. 94; *McNamee* v. *Nesbitt*, 24 Nev. 400, 56 Pac. 37; *Lewis* v. *Hyams*, 25 Nev. 242, 59 Pac. 376; *Paul* v. *Cragnaz*, 25 Nev. 293, 59 Pac. 859, 47 L. R. A. 540.)

In the early case of *Sharon* v. *Minnock*, commenting upon this provision of the statute, the court says: "It would be unjust to the court below and to the opposite party to reverse a ruling admitting or rejecting evidence upon a ground no way suggested at the time of objection, and upon which the court was not called upon to decide."

Much as we may regret that a question which is regarded by counsel of so much importance must be disposed of under a technical rule of procedure, and not considered upon its merits, yet so long as the rule of the statute prevails courts and counsel are alike bound by it, and it is our duty to enforce it in all proper cases.

It appears that, after the argument and submission of the cause, the court, upon the application of the appellant, set aside the submission, and permitted him to file an amendment to his complaint, in which, briefly stated, he alleged that on or about the 27th day of June, 1891, the appellant was the owner of 1,600 head of sheep; that on said date the said William Stock was the owner of 4,936 sheep; that on said date the appellant and said Stock, by mutual agreement, united in one band all of said sheep, and from that time owned said sheep jointly in the proportion that the number of the sheep owned by the appellant then bore to the number owned by said Stock, and that thereafter they carried on and conducted the business of sheep raising jointly, and shared the expenditures and divided the profits and losses that grew out of said joint venture in the proportion above stated; that the relation so formed continued up to the death of said Stock, on the 25th day of November, 1898.

This amendment was permitted over the objection of the respondent, and upon her application the court permitted her to file an amended answer, in which, among other matters pleaded, she set up the bar of the statute of limitations. The allowance of this plea by the court is assigned as error.

The appellant's right to maintain an action to recover all the sheep, under the averments of the partnership in the original complaint, arose upon the death of William Stock in November, 1898. There is no provision in our statute which would have barred his right of action under the averments of the original complaint, at the time he instituted the same; hence the plea of the bar of the statute could not have been successfully interposed against his right to recover at that time. He did not seek to recover, as a joint tenant or tenant in common, until he incorporated the amendment in his complaint on the 7th day of February, 1900. The amendment contained substantial and new matter. His right to recover

was based upon new grounds. A new cause of action was set up, and the rule is well established, and is not in conflict with the provisions of our statute regulating amendments to pleadings, that, where a complaint to which an answer has been filed is amended in substantial matter, the defendant has an absolute right to plead *de novo*. (1 Enc. Pl. & Prac. p. 627, and authorities cited.)

It seems to us that where the appellant, as in this case, asked and was granted permission by the court, over the respondent's objection, to incorporate into his complaint a new cause of action, it would have been gross error to have refused to allow her, at the first opportunity, to avail herself of any valid defense which might exist against appellant's right to recover upon the new cause of action, or a cause which had been amended by inserting new and substantial matter. Whether or not it would have been error to allow the respondent to have interposed the plea of the bar of the statute of limitations at that stage of the proceedings, where no amendments to the complaint had been asked and allowed, is a question upon which it is not necessary to express an opinion. It is sufficient for this case to say that, under the facts of the record, the trial court did not abuse its discretion in permitting the plea.

It is also claimed that the plea of the statute of limitations is not sustained. If the appellant had a right to recover the sheep under the claim of joint ownership, as set up in the amended complaint, the record shows that such right was barred by the lapse of time. It appears from the evidence that on or about the 10th day of August, 1895, Stock absolutely denied that the appellant had any right, title or interest in or to the sheep in controversy, in a conversation with appellant in the presence of witnesses; that he immediately, as shown by the stipulation of the parties, took and held the exclusive control and management of the sheep, and wholly excluded appellant therefrom, up to the time of his death, and during said time paid all the expenses and retained all the profits. Generally, one tenant cannot maintain an action in replevin against his cotenant for the recovery of the common property or his interest therein, but if the property is severable, and the tenant has a right to sever his part from

the whole, and this right is refused, he may enforce such right by replevin.   (Freem. Co-Ten., 2d ed., 289; 17 Am. & Eng. Enc. Law, 2d ed., p. 700.)

It appears, therefore, that the right of the appellant to recover in this action under his claim of joint ownership, if he had any such right, accrued on or about the 10th day of August, 1895.   He did not attempt to assert this right for more than four years.   His right of action is barred by the three-year clause of our statute (Comp. Laws, 3718), at which time his cotenant, William Stock, was living.

We have been unable to find any provision of the statute which in any manner changes or enlarges the rights of the parties as above indicated, or that confers any greater right upon the appellant in his action against the legal representative of William Stock.   In fact, Section 165 of the act regulating the settlement of the estates of deceased persons specifically provides, among other matters, for the maintenance of actions to recover personal property by or against executors or administrators, in all cases where the same might have been maintained by or against their respective testators or intestates in their lifetime.   (Comp. Laws, 2951.)

The only remaining question to be considered involves the sufficiency of the evidence to support the judgment of the court.   The appellant earnestly contends that the evidence establishes the existence of the partnership between him and William Stock, deceased, as alleged in the complaint, and the respondent as earnestly contends that the evidence shows that such partnership did not exist.   There is no proof of a written agreement between the appellant and Stock; in fact, the appellant admits in his brief that no such agreement was ever made.   He sought to establish the partnership by proof of facts and circumstances tending to show the partnership relation.

A careful examination of the record develops proof tending to sustain the contention of both parties.

A discussion of the various facts relied on by the respective parties would unnecessarily lengthen this opinion, and would require, to a certain extent, this court to weigh the testimony, and pass upon the credibility of witnesses, in

order to reverse the judgment, and thereby, to a certain extent, usurp the province of the trial court.

To illustrate: It appears that William Stock and R. H. Schwartz each owned separately and individually, prior to the........ day of June, 1890, a band of sheep. In proof of the formation of the partnership in June, 1890, the appellant showed that these two bands were united into one band, and placed under the control of one person. The witness Rickard, who took charge of the united band, testified that Schwartz told him that he had sold his sheep to Stock, and an entry in Rickard's book, in the handwriting of the appellant, Schwartz, was offered, which corroborates Rickard's testimony. The trial court may have and undoubtedly did pass upon the credibility of the witness Rickard. It was, at least, the duty of the court so to do.

It is our duty to affirm or reverse a judgment only when such judgment is not supported by, or is contrary to, the evidence, and, where the record discloses a substantial conflict therein, the rule has long been settled that this court will not disturb the judgment of the trial court under the assignment made.

No error having been shown, the judgment and order will be affirmed.

BELKNAP, J.:    I concur.

FITZGERALD, J.:    I concur in the judgment.