Boylan v. Huguet.

PATRICK BOYLAN, RESPONDENT, v. H. HUGUET et als.,
APPELLANTS.

TROVER FOR MINING STOCK AGAINST ASSIGNEES FOR BENEFIT OF CREDITORS.
Where a mining stock broker failed and assigned all his property for the benefit
of his creditors; but one of them, for whom he had purchased stock in certain
companies, declined to accept the assignment and demanded stock in such com-
panies then held by the assignees, and upon their refusal to deliver brought
trover as for a conversion : Held, that the fact that the assignees did not have
sufficient of such stock to fill all the broker's contracts therefor could not be urged
as a valid objection to a recovery.

MINING STOCK TRANSACTIONS—BROKERS NEED NOT DELIVER IDENTICAL STOCK
PURCHASED. In the ordinary transactions between principals and brokers, prin-
cipals are not entitled to receive the identical shares of stock purchased on their
order, and brokers are within the terms of their contracts so long as they are
prepared to deliver on payment and demand certificates representing the requi-
site number of shares.

PROPERTY IN MINING STOCK, WHAT. There is no special value or property in any
particular share of mining stock, as distinguished from any other share, unless
issued in the name of a party and charged to him upon the books of the com-
pany.

TROVER—MEASURE OF DAMAGES. The damages awarded in the action of trover
should be all such and only such as necessarily flow from the wrongful act; that
is to say, the value of the property at the time of conversion (for that is what one
has found and the other lost), together with damages for the detention of that
value (which is interest from conversion to judgment), and in addition any
special damage which may legitimately arise out of matters in existence at the
date of the tort.

CONVERSION OF MINING STOCK—"HIGHEST MARKET PRICE" NOT TRUE RULE OF
DAMAGES. Where a judgment in trover for the conversion of mining stock was
for the highest market price of the stock between the conversion and the trial,
and far exceeded the market price at the time of conversion and interest, and no
special damage was shown: Held, that the judgment proceeded upon a wrong
theory of the measure of damages and that it should be reversed.

APPEAL from the District Court of the First Judicial Dis-
trict, Storey County.

It appears that Boylan, the plaintiff, on or about June 2,
1870, requested H. H. Flagg, a broker of Gold Hill, to pur-
chase for him ten shares of stock in the Savage Mining Com-
pany. Flagg made the purchase and entered it on his books
to the credit of Boylan. Afterwards various transactions in
mining stocks took place between them, until on or about

23

February 2, 1872, when Flagg's books showed that he held to the credit of Boylan thirty shares of Savage stock, thirty shares of stock in the Alpha Mining Company, and that Boylan had paid up all that he owed Flagg. On February 3, 1872, Flagg failed, and in a day or two afterwards made an assignment of all the mining stocks held by him to the defendants, H. Huguet, William N. Hall, Wilson Dunlap, Samuel W. Chubbuck and R. J. Butler, as assignees for the benefit of his creditors. Among other stocks so assigned and delivered to the defendants were eighty-nine shares of Savage and one hundred and forty-four shares of Alpha; but all that Flagg had and all his assignees ever received fell far short of being sufficient to fill all his contracts.

On February 26, 1872, Boylan demanded of the assignees thirty shares of Savage and thirty shares of Alpha stock, claiming the same to be his own property, received by them from Flagg; and upon and for their refusal to deliver the same he commenced an action of trover against them, laying his damages at $8130. This amount he recovered; but upon defendants making a motion for a new trial, he confessed error, allowed the motion to be granted and thereupon dismissed the action, and on June 20, 1872, commenced this second action, laying his damages at $28,950, as stated in the opinion. The reason of this great difference in the amount of damages claimed appears to have been a great rise in the market price of stocks after the commencement of the first suit. On February 26, 1872, the time of the conversion, the market price of Savage was $216 per share and of Alpha $31 per share. In April following these stocks reached the highest price at any time attained between the time of conversion and trial of this, the second suit; that of Savage being $650 and that of Alpha $185 per share. It was upon the basis of these latter named prices that the court below assessed the damages and rendered judgment in favor of plaintiff for $25,050. Defendants moved for a new trial, which was denied; and they then appealed from the judgment and order.

*Williams & Bixler*, for Appellants.

I.   A consideration of all the facts relating to the transactions between the parties justifies us in putting the case upon the footing of a bare agreement on the part of Flagg to deliver to respondent, on demand and payment, thirty shares of Savage stock.   The agreement belonged to that class of contracts known as "executory contracts."   Had Flagg been put into bankruptcy on February 3, 1872, all the stocks in his possession would have gone to his assignee, and it is clear that plaintiff would not have been allowed thirty shares of Savage to the exclusion of all the other claimants against Flagg of that stock; and yet such must have been the case if title thereto had absolutely vested in him prior to that time.   We think therefore that we are justified both by reason and authority in urging that the contract between plaintiff and Flagg was merely executory, and hence that plaintiff could not maintain trover against Flagg, much less against these defendants.   His remedy against Flagg, after payment, demand and failure to deliver the stock, was either for specific performance of the contract or damages for its violation.

II.   Defendants did not wrongfully take, nor did they detain or convert, any property which the plaintiff showed himself entitled to.   Flagg was lawfully in possession of the property delivered to defendants, and they received it upon an agreement with him and his creditors that they would appropriate the same for the benefit of all his creditors.   Had they, without identification of property, delivered to plaintiff thirty shares of Savage or Alpha stock, they would have committed a wrong against the other creditors for which they would have been held liable at their suit.   Upon what principle of right, justice or law can it be said that plaintiff was any more entitled to the stock received by defendants than the other claimants of Savage stock?

III.   Upon the oral argument it was suggested by counsel for plaintiff that there might have been a difference between the relations of Flagg to his customers who paid in full and

those who had made only part payment on stocks purchased for them.    In that suggestion they are not sustained by their leading case, *Markham* v. *Jaudon*, 41 N. Y. 235, nor any other authority which we have been able to find; and we beg to suggest that it is not founded in sound logic.    We think the court below was led into holding plaintiff the owner of the stock alleged to have been converted by an erroneous application of the cases which hold that there is no difference between stocks of the same denomination, and that a seller may comply with a contract of sale by delivering any certificates of the particular stock agreed to be delivered which satisfy the amount.    It seems to have concluded that the right of selection by the seller of stock to be delivered, confers upon the purchaser a corresponding right of selecting what he will take.    We think the proposition too clearly untenable to require discussion.

IV.    Though it may be said that the law concerning the measure of damages in actions of trover for the conversion of property of fluctuating value is unsettled, especially as to the time at which the value of the property converted is to be estimated, all the authorities seem to agree that the end generally to be attained is to compensate the owner of the property, in money, for the injury done him by the wrongful conversion—in other words, to put him as near as may be in as good condition as he would have been had his property not been taken.    Damages are limited to compensation except in those cases where exemplary damages are, for some special cause, assessed as a punishment to the wrong doer, or to prevent him making profit by his wrongs. It would seem that the value of the thing taken, added to the value of its use between the time of the conversion and judgment, ought generally to compensate the owner, and, except in special cases not arising in the ordinary course of business, that such should be the rule of the measure of damages.

*Lewis & Deal,* also for Appellants.

The measure of damage allowed in this case was the highest market price of the stock between the time of conversion and the day of trial, without the least showing or particle of evidence that the plaintiff would have realized that value, even if he had the stock in his possession; or in other words, without any proof whatever that he was really damaged to that extent. The rule so adopted has no sanction in legal principles and is only sustained by the decisions of three or four states; and they were rendered upon an entire misunderstanding of some English decisions of a comparatively recent date. The old rule which prevailed uniformly up to the decision of *West* v. *Wentworth,* 3 Cowen, 82, was that the current or market value of property at the time of conversion was the measure of damage, (*Amery* v. *Delamere,* 1 Strange, 505; *Fisher* v. *Prince,* 3 Burr. 136; *Gainsfield* v. *Carroll,* 2 B. & C. 624; *Startup* v. *Cortozzi,* 2 Crompt. M. & Roscoe, 165,) with perhaps this qualification, that if special damage could be proven it might be recovered in addition to the value of the article. But as is very clearly shown by Judge Duer in the case of *Suydam* v. *Jenkins,* 3 Sanford, 614, where all the English cases up to that time are elaborately and ably reviewed, in none of them was it held that the highest market value between the time of conversion and day of trial was the measure of damages, but only that the value at the time of trial might in some cases be so considered. But there is a material distinction between allowing the highest market value, as was done in this case, and the value at the time of trial. See *Fisher* v. *Prince,* 3 Burr. 136; and *Whitten* v. *Fuller,* 2 Bl. Rep. 902.

Now, so far as we have been able to ascertain, all the American cases supporting this rule are based upon the English cases referred to; but it being very clear that those cases do not sustain the proposition that the highest market value is the measure of damages, little or no weight should be given to them. If, however, they are entitled to consideration, the great weight of decision is the other way.

Though New York, Connecticut, Iowa, Pennsylvania and California may support the rule, it appears from *Page* v. *Fowler*, 39 Cal. 420, that California is not satisfied, and from *Markham* v. *Jaudon*, 41 N. Y. 235, that several of the New York judges dissent from it. On the other hand we find in a limited examination many cases in which the rule is directly repudiated. See *Suydam* v. *Jenkins*, 3 Sanford, 604; *Smith* v. *Dunlap*, 12 Ill. 184; *The Railroad* v. *Pinkerton*, 42 N. H. 424; *Taylor* v. *Turner*, 2 Cranch C. C. Rep. 203; *Walker* v. *Borland*, 21 Mo. 289; *Hill* v. *Smith*, 32 Vt. 433; *Gray* v. *The Portland Bank*, 3 Mass. 364; *Sargent* v. *The Franklin Insurance Company*, 8 Pick. 90; *Startup* v. *Cartozzi*, 2 Crompt. Meeson and R. 163; *North American* v. *O'Meara*, 2 Nev. 113. See also, Sedgwick on Damages, 550, note; 2 Kent's Com. (8th Ed.) 480, note.

*Mesick & Wood* and *R. H. Taylor*, for Respondent.

I. The transaction between Boylan and Flagg was in no sense a sale of anything by Flagg to Boylan nor a purchase of anything by Flagg for himself, but was simply the execution by Flagg of Boylan's order to purchase for him and advance the purchase-money in whole or in part. Thus was created a debt on the part of Boylan to Flagg for commissions, expenses, money advanced for making the purchases and interest accruing, to secure the payment of which Flagg held the Savage stock so purchased together with the thirty shares of Alpha stock delivered to him by Boylan. The relations existing between them are correctly indicated in the opinion of Justice Hunt in the case of *Markham* v. *Jaudon*, 41 New York, 239.

II. The intangible nature of property in stocks and the impossibility of distinguishing one share from another would seem to render it impracticable to apply to this species of property the ordinary rules of identification. One share is the equivalent of another. Rights and obligations must be held to be reciprocal; and if a broker or pledgee may substitute an equivalent and be protected in the courts, why may

not the pledgor or principal receive the benefit of the same doctrine? Why shall not the plaintiff here be entitled to claim as his own the shares found in the hands of Flagg's assignees, which they might have compelled him to accept as his own, had they chosen to deliver him the stock instead of withholding it?

III. The rule adopted by the district court in estimating damages prevails in England and in many of the United States. See *Markham* v. *Jaudon,* 41 N. Y. 234; *Romaine* v. *Van Allen,* 26 N. Y. 309; *Musgrave* v. *Beckendorff,* 53 Penn. St. 310; *Shepherd* v. *Johnson,* 2 East. 211; *Hamer* v. *Hathaway,* 33 Cal. 117; *Greening* v. *Wilkinson,* 1 Carr & P. 625; *Barrow* v. *Arnaud,* 8 Adol. & Ell. N. S. 595; *Archer* v. *Williams,* 2 Carr & Kir. 27; *West* v. *Pritchard,* 19 Conn. 212; *Adams* v. *Blodgett,* 47 N. H. 219; *Morgan* v. *Gregg,* 46 Barb. 184, 188; *Kortright* v. *Commercial Bank of Buffalo,* 20 Wend. 91; 22 Wend. 348; *Clark* v. *Pinney,* 7 Cow. 681; *Scott* v. *Rogers,* 31 N. Y. 683; *Burt* v. *Dutcher,* 34 N. Y. 493; *Douglas* v. *Kraft,* 9 Cal. 562.

IV. The injured party should be entitled to receive the amount he could have realized had he chosen to avail himself of the opportunity when the market was high and had he not been prevented by the act of the wrong-doer. There is no reason in saying that he might not have taken a notion to sell his property when it bore the highest price, and that therefore he should be limited to the market price existing at the time he was dispossessed and interest. It seems to us clear that any rule of damages by which the wrong-doer is made to pay more than the value of the property when it is first converted, whether in the shape of interest or money realized by a sale or otherwise, is founded upon the same principle as that which allows the highest fair market price at any date between the time when the owner is dispossessed and the trial.

By the Court, WHITMAN, C. J.:

This action is trover, for the conversion of mining stock. Boylan, the respondent, dealt for a series of months with one Flagg, a broker of Gold Hill, Nevada, in the ordinary course of business. He gave orders which Flagg filled through his broker in San Francisco; and the purchases and sales as effected in the stock board there were reported to Boylan as the acts of Flagg. The former had no communication with the San Francisco broker; his account was kept entirely with Flagg and at the time of Flagg's failure was fully paid up, and thirty shares of the stock of the Savage Mining Company and a like number of the stock of the Alpha Mining Company stood to his credit upon Flagg's books.

To the assignment for the benefit of his creditors, made by Flagg to appellants, respondent did not assent, but shortly thereafter notified them that he claimed the stocks before named; and on the twenty-sixth of February, 1872, he made formal demand therefor, upon refusal of which he commenced suit and recovered some eight thousand dollars. The appellants moved for a new trial; respondent confessed error, dismissed his suit and immediately instituted the present one, laying his damages at $28,950, of which he recovered $25,050.

At the time of the demand upon them, appellants held of the stocks assigned to them sufficient to satisfy respondent, though not enough to fill all Flagg's contracts; this is urged as an objection to respondent's recovery; but it is no element of this case, which has to do with its parties and not with strangers.

Appellants argue, first, that there should be no recovery; second, that if any the measure of damages should be different. The first point presents no difficulty, the second is more complicated. The transaction between Boylan and Flagg was one of every day occurrence, which is perfectly well understood by the community and is well defined at law, in which the parties occupied the mutually double positions,

first of principal and agent, secondly of pledgor and pledgee. To make the first purchase Flagg acting as broker advanced money which was charged to his customèr, while at the same time the stock bought was credited to his account, held however as a pledge for the moneys advanced, commissions charged and whatever other items went to make up the sum of indebtedness. Upon full payment thereof and demand therefor Boylan was entitled to the possession of the stock. All increase or decrease in value while so held was to his account; if sold the surplus proceeds were his, for it was his property from the moment of the purchase, subject to the lien before mentioned. This is clearly and conclusively the real position of the parties. It would seem self-evident; but let those who desire an elaboration of the matter see *Markham* v. *Jaudon*, 41 N. Y. 235.

It does not follow, however, that Boylan was entitled to receive the identical shares of stock purchased on his orders, if any were so specifically purchased: that was not the contract. Flagg, for the consideration of the market price of the stock, his commissions and other legitimate charges, agreed to buy for the respondent an interest in the Savage Mining Company equivalent to the number of shares ordered, and to deliver as evidence of that interest the certificates issued by the company to represent the same. It made no difference whether the certificate was number one or number one thousand, nor that he purchased number one and delivered number one thousand. So long as he held a certificate or certificates representing the requisite number of shares and was prepared to deliver them on payment and demand, so long was he within the terms of his contract; and though he might have used and re-used the identical certificates received on filling Boylan's orders, mixed them with others, destroyed them even, there was no conversion until he, or as in this case, his voluntary assignees refused to deliver upon demand; and so with the Alpha shares held as security. There is no special value or property in any particular share of stock, unless issued in the name of a party and to him charged upon the books of a company, which does not

appear to have been the fact in the present instance. Boylan's property and Flagg's charge were in so many shares, not in any particular shares.

Upon this refusal to deliver occurred the breach of contract, then the technical conversion. What should be the compensation for this wrong? From the general tenor of decisions in analogous cases it would seem in the absence of special cause of damage that the answer was clear: "The value of the property at time of breach of contract or conversion, with legal interest as damages for the detention of such value." The judgment herein was rendered upon a different theory, and was given for the highest market price between the conversion and the day of trial; and it is insisted by respondent that this is the rule with reference to property of fluctuating value.

That this is the rule in New York, subject to some meaningless exceptions, such as bringing suit within reasonable time, etc., there is no doubt. That some other states, notably Iowa, Pennsylvania and California, have substantially adopted this rule is true. Connecticut is sometimes ranked in the same line, but that is a mistake. *St. Peter's Church* v. *Beach*, 26 Conn. 356. California has endeavored to modify in some degree (*Page* v. *Fowler*, 39 Cal. 412), and New York shows its determination to recede, upon occasion made, in the following language of the entire court of appeals, by Church, Ch. J., pronouncing a recent opinion: "An unqualified rule, giving a plaintiff in all cases of conversion the benefit of the highest price to the time of trial, I am persuaded can not be upheld upon any sound principle of reason or justice. Nor does the qualification suggested in some of the opinions, that the action must be commenced within a reasonable time and prosecuted with reasonable diligence, relieve it of its objectionable character. Without intending to discuss this question at this time, we deem it proper to say that while the decisions and opinions of our predecessors will receive the utmost respect and consideration, we do not regard the rule referred to so firmly settled by authority as to be beyond the reach of review, whenever an

occasion shall render it necessary." *Matthews* v. *Coe*, 49 N. Y. 57. This is only dictum; but such dictum is very ominous of the fate of the New York rule.

It is not surprising that there is a desire to escape effects which are sometimes so absurd. As in this case, the first suit and recovery were for some eight thousand dollars: had that judgment stood, as it probably would have done but for the motion of appellants, the law would have declared that respondent was fully compensated for his loss consequent upon the wrong-doing of appellants; but that judgment having been set aside, it took over three times that amount to afford compensation only a few months after. In other words, damages were given which were purely speculative, which were not only not proven but which were against all probable presumption, as human experience teaches that the man who sells his stock at the highest price is the rare exception to the generality of dealers. Yet the measure was correct if the rule be so; the suit had been brought seasonably, and prosecuted with diligence.

Looking at the assumed basis of this rule it is impossible to add anything to the exhaustive *resumé* of the decisions said to constitute its foundation, as given in *Suydam* v. *Jenkins*, 3 Sand. 614; but it is curious and perhaps not uninstructive to re-glance at them for a moment. And first the stock cases so called, which were writs of inquiry to assess damages on bonds given to replace stock; and they hold that if the stock has risen in value since the day when it should have been delivered, the price at the time of trial is to be the measure of damages. *Shepherd* v. *Johnson*, 2 East. 211; *McArthur* v. *Seaforth*, 2 Taunt. 257; *Donner* v. *Buck*, 1 Stark. C. 318; *Hamun* v. *Hamun*, 1 C. & P. 413; *Owen* v. *Routte*, 14 C. B. 327. This upon the theory that the plaintiff wanted to keep his stock and therefore could only be indemnified by a verdict for money sufficient to replace it, as the defendant was bound to do. None of these cases hold, and *McArthur* v. *Seaforth* expressly negatives the idea that the highest price at any intermediate day can be allowed.

This rule was followed in this State in an equity case to

compel the transfer of certain shares of stock (*O'Meara* v. *North American Mining Company*, 2 Nev. 113) and is undoubtedly correct under similar circumstances either at law or in equity; but how it can justify the measure of damages allowed in this case is inexplicable; for here and in like cases courts never would allow the converted property to be restored in specie, except where it might be of such nature that its value could not have been changed; and the real question to be determined almost invariably is its worth, not that the party delinquent may replace it, as he would have been allowed to do in the cases cited, but that the injured party may be indemnified for its loss. When? Why when he lost it, not before nor after, but at the time when the loss occurred.

There are a few other decision which seem to have been rendered rather upon the desire to do justice in the particular case than upon general principles and which are hardly precedents for anything. In *Greening* v. *Wilkinson*, 1 Carr & P. 625, trover for East India Company's warrants for cotton, the highest price either at time of conversion or subsequently, at jury's option, was given. Of this case Judge Duer says in *Suydam* v. *Jenkins, supra:* "It is, however, only a *nisi prius* decision, and the report is not only brief, but we apprehend imperfect; material facts seem to be omitted, nor is it stated what was the verdict finally rendered." That this is not the accepted rule appears from the uncontradicted remarks of counsel in *Elliott* v. *Hughes*, cited *post*. In *Archer* v. *Williams*, 2 Carr & Kir. 27, action for the wrongful detention of scrip, Creswell, J., directed the jury to find the highest price between conversion and trial: this direction they disobeyed; and finally, in making up a bill of exceptions, the instruction was considered to have been that more than nominal damages were to be allowed; so that case is not authority in point. In *Shaw* v. *Holland*, 15 M. & W. 145, an action for non-delivery of railway shares, the same rule was applied as in *Gainsford* v. *Carroll*, 2 B. & C. 624, for non-delivery of goods; *i. e.*, the difference between the contract price and the market price on the day when the contract

was broken; making the distinction however, which is often found but which upon reflection will be seen to be none, that the money not [having been paid it was in the power of the vendee to go into the market and buy and thus save himself, as if he was called upon to do so, and might not rely upon his contract. In *Mercer* v. *Jones*, 3 Camp. 477, Lord Ellenborough lays down the rule in trover, "that the plaintiff is entitled to damages equal to the value of the article converted at the time of the conversion," and applying it to the case in hand (trover for bills of exchange), disallowed interest after demand and refusal to deliver. Of this case, Abbott, Ch. J., is reported to have said in *Greening* v. *Wilkinson*, that it was hardly law. Thus the wisest disagree.

In a recent case at *nisi prius* the highest price of goods between the agreed date of delivery and time of trial was given; and the case is worthy to be quoted somewhat lengthily, as presenting a comical instance of reasoning in a circle to make a rule. Remembering that the New York rule is fathered on English decisions, hear counsel. The action was for non-delivery of hops contracted at five pounds ten shillings the hundred weight; they had risen from the time of delivery to seven pounds ten shillings, at which price they continued till the day of trial. To the offer by plaintiff of evidence to that effect, "Joseph Brown (with whom was Shee, Sergt.) objected that such evidence was not admissible, as a series of cases had decided that the measure of damages for the non-delivery of goods purchased was the market price at the time of the breach of contract.

"McMahon (with whom was Digby Seymour) submitted that the rule applied only where the goods were not paid for at the time of the purchase, in which case it was said that the buyer not having parted with his money could go with it into the market and buy at the current price; but that a different rule prevailed where, as in the present case, the price was paid at the time of purchase. There was no case in which this precise point had been decided in the courts of this country, though there were several decisions upon it in the American courts. The nearest analogous cases in our

courts were those relating to the loan of stock, in which it
was decided that on the failure to return it the lender was
entitled to recover the highest price up to the day of trial.
*   *   *   *   His lordship (Byles, J.) said  *  *  *  he
would rule that the plaintiff was entitled to recover the value
of the hops at the price of the present day, but would give
the defendant leave to move to reduce the damages if the
court should think he was wrong." *Elliott* v. *Hughes*, 3 F. &
F. 387.  No motion was made to reduce; so the case stands
decided upon American authority, there being confessedly
none English; while on the other hand the American cases
claim English parentage.

The fact is, there is no such well established rule.  There
have been exceptional instances of granting this measure of
damages, probably with the laudable desire of doing exact
justice at the moment in an individual case.  There has also
been an attempt to make these exceptions the rule; but that
has not prevailed, nor should it; for the purpose of the law
is to make the nearest practicable approach to justice in all
cases; and that can only be attained by the preservation of
fundamental principles.  What are they in cases like the
one at bar?  To that question there can be but one answer;
all the authorities concur.  Complete indemnity to the party
injured, but no punishment to the wrong doer.

To accomplish this end all damages must be given which
necessarily flow from the wrongful act.  Those are the value
of the property at the time of conversion, for that is what
one has found and the other lost, together with damages for
the detention of that value, which is legal interest from
conversion to judgment, and in addition any special damage
which may legitimately arise out of matters in existence at the
date of the tort.

This rule does not militate against any former decision of
this court, and agrees with its dicta in *O'Meara* v. *North Am.
M. Co.*, 2 Nev. 113; *Prescott & Booth* v. *Wells, Fargo & Co.*,
3 Nev. 82; *Carlyon* v. *Lannan*, 4. Nev. 156; *Bowker* v. *Good-
win*, 7 Nev. 135.  It dissents from the letter of a few Amer-
ican and English decisions—the former in their incipiency

shown in *Suydam* v. *Jenkins* to have been ill founded, while the latter are equally so. With the spirit and object of all authorities—complete indemnity to the injured party—it concurs; and it is believed it will prove to be productive of equal justice between litigants, giving indemnity while repressing speculation, enforcing restitution but repudiating punishment.

As the action of the district court was utterly at variance with the rule adopted, it follows that the case must be sent back. The order and judgment appealed from are reversed and cause remanded for a new trial.