[No. 1925]

ROBINSON    MINING    COMPANY, Appellant, v.
.RICHARD M. RIEPE, HENRY   FULMER, ROY
R. IVES, Doing Business Under the Firm Name
AND Style of Fulmer & Ives, Respondents.

[138 Pac. 910]

1. Corporations—Transfer of Shares—Refusal to Transfer—
Sufficiency of Evidence.

In an action against a corporation for conversion of stock
by refusing to register its transfer on its books, evidence *held*
to support a finding that the transfer was a *bona fide* transac-
action.

2. Conversion—Issues—Proof and Variance—Date of Conver-
sion.

In an action against a corporation for conversion of stock
in refusing to register its transfer on its books, it was not
necessary that the proof should be in strict conformity with
the averment as to the date of conversion.

3. Conversion—Refusal of Corporation to Transfer Stock—
Conditions Precedent to Action.

Where the secretary of a corporation refused to register a
transfer of stock when presented by the transferee, no formal
demand was necessary before bringing an action for conversion,
since the refusal was an assertion of ownership by the corpora-
tion.

4. Appeal and Error—Finding—Conclusiveness.

Where there is a substantial conflict in the testimony, the
appellate court will not substitute its judgment for that of the
trial court, and will only interfere when it is clear that a wrong
conclusion was reached.

5. Conversion—Refusal of Corporation to Transfer Stock—
Measure of Damages.

In an action against a corporation for the conversion of stock
in refusing to register its transfer on its books, the measure of
damages was the value of the stock at the date of conversion,
with legal interest from the conversion to judgment.

6. New Trial — Newly Discovered Evidence — Diligence — Affi-
davit.

Where, on motion for new trial on the ground of newly
discovered evidence, the affidavit of the moving party merely
stated conclusions as to exercise of diligence, without setting
out the facts, so that the court could draw its own conclusions,
it was insufficient.

7. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DILIGENCE.

Where the alleged newly discovered evidence would consist of the testimony of witnesses who resided at the place of trial and were present at the trial to the knowledge of the moving party, or who testified as witnesses in the case, sufficient showing of diligence is not made out.

8. NEW TRIAL — NEWLY DISCOVERED EVIDENCE — IMPEACHING EVIDENCE.

It is not abusive of discretion to refuse a new trial upon alleged newly discovered evidence where such new evidence is only of an impeaching character.

APPEAL from the Fourth Judicial District Court, White Pine County; *George S. Brown*, Judge.

Action by the Robinson Mining Company against Richard A. Riepe, Henry M. Fulmer, and others. From a judgment for defendant Fulmer on his cross-complaint, plaintiff appeals. **Affirmed.**

*S. W. Belford*, for Appellant.

*Chandler & Quayle* and *Gilbert A. McElroy*, for Respondent.

By the Court, MCCARRAN, J.:

This is an appeal from an order of the Ninth judicial district court denying appellant's motion for a new trial. Judgment in this case was rendered on the counterclaim interposed by Henry M. Fulmer, who was made defendant in an action brought against himself, together with other defendants, by the appellant corporation. Respondent Fulmer's cause of action was acquired by him through assignment from one E. W. Hulse. The latter had purchased from Fulmer 21,500 shares of the capital stock of appellant corporation, giving in payment thereof his personal promissory note unsecured and $100 in coin. The secretary of the appellant corporation refused to transfer the stock on the books of the company when Hulse presented the certificate purchased from Fulmer. Respondent Fulmer consented to a rescission of the contract existing between himself and Hulse relative to the purchase of the stock; the stock being returned to Fulmer, together with an assignment of Hulse's cause of action. Hulse

received back his $100 in coin, and also the promissory note.

The appellant company moved the trial court to set aside the decision and judgment, and grant a new trial thereof upon the counterclaim of Henry M. Fulmer against appellant upon the following grounds: "First— That the evidence is insufficient to justify the judgment of the court in favor of defendant Henry M. Fulmer, and against plaintiff, * * * and that said judgment is against the law. Second—That the said plaintiff Robinson Mining Company has newly discovered evidence to offer in its behalf material for the plaintiff, and pertaining to the said claim of the said defendant Henry M. Fulmer, against the defendant, which it could not with reasonable diligence have discovered and produced at the trial."

Respondent Fulmer's cause of action, as set forth in his counterclaim, being an action in trover, was based upon the assignment of a cause of action accruing in favor of Hulse, due to the fact that the appellant company, having refused to transfer the shares of stock upon its books, had converted the stock to its own use to the damage of Hulse; Hulse's cause of action having been assigned to Fulmer.

[1] The record in this case discloses a series of most peculiar transactions. In Fulmer's counterclaim it is asserted that the conversion took place on the 17th day of June. The testimony of D. W. Ellis, secretary of the appellant company, is as follows: "Mr. Hulse approached me on the street, and I refused to cut up the stock. There was some little discussion there; but I did not give him any reason at that time. When he handed me the stock at the office I told him the reason I would not cut up that stock was because it was pooled. I was under the impression that the pool was not out yet; but I was wrong in that impression. There were a few further reasons which I would not state at that time. The company had grievances against several people; but I did tell him there were other reasons."

The testimony of Fulmer and Hulse, as disclosed by the record, substantiates a *bona fide* transaction in the transfer of the stock from the latter to the former. Although the transaction itself was one of an unusual character, and perhaps subject to some suspicion, there is nothing disclosed that would cause one to believe that it was other than that of a *bona fide* nature. Fulmer's acceptance of an unsecured promissory note in payment for a large sum of money, and his delivery of the stock to Hulse upon receipt of that note, is emphasized by the appellant as indicating a suspicious transaction; but the dealings of men in matters of this character cannot be viewed with suspicion merely because one appears to place unusual faith in the honesty of another. After the company had refused to transfer the stock for Hulse, or to "cut it up," as he terms it, Fulmer's act in permitting a rescission of the contract between himself and Hulse appears from the record to have been one of a voluntary nature, by which he gave back what he had received from Hulse, and in return accepted the stock from Hulse and an assignment of the latter's cause of action against appellant. Nothing in these transactions would indicate anything other than a peculiar yet honest dealing between the two men.

Prior to the assignment of Hulse's cause of action to Fulmer it is admitted that he had instituted proceedings in *mandamus* to have the stock transferred. With reference to Hulse's cause of action against appellant corporation, which cause of action was assigned to Fulmer, and upon which cause of action judgment is rendered in favor of Fulmer, it is alleged in the counterclaim that the presentation of the stock was made on the 17th of June. The testimony both of the witness Ellis and Hulse discloses that this presentation was made upon the street, in the way of a request by Hulse to have the stock cut up. A subsequent presentation was made in the office of the company. The secretary of the company, Mr. Ellis, to whom this request was made, both on the 17th of June and on the next occasion, whether it be on the 18th, 19th, or 20th, refused to transfer the stock; the principal

reason given to Hulse at that time by the secretary being that the stock was still in pool, but in his testimony at the trial it is disclosed that there were other reasons in his mind.

He says: "There were other reasons which I would not state at the time. The company had grievances against several people; but I did tell him [Hulse] there were other reasons."

In his cross-examination Mr. Ellis states: "Well, the board of directors, Mr. Dickerson and Mr. O'Neil, we knew they were selling that stock for a great deal less than they should sell it for, and that the stock belonged to the company, and it was the 50,000 shares that we had that I had notified Mr. Dickerson and Mr. O'Neil that was still left, and that we would take some action in regard to having it put back into the treasury. I did not want to make any more certificates on that account."

[2] As to whether or not the conversion actually took place on the 17th of June is immaterial. It was not necessary at common law, and is not necessary under our practice, that the proof should be in strict conformity with the averment as to date of conversion, and the allegation as to the time of conversion is immaterial. This point has been heretofore settled by this court. (*Hixon* v. *Pixley*, 15 Nev. 475; *Bancroft* v. *Haslett*, 106 Cal. 151, 39 Pac. 602.)

[3] Appellant contends that the evidence is not sufficient to support the judgment, because there was no evidence to support a formal demand for the transfer of the stock to any specific person, or in any designated number of certificates. The rule applying to this contention, as well as to that of the variance in time, is well established, and is well stated by a very recent case decided by the Supreme Court of Oklahoma, in which that court held that, in a suit for conversion of personal property, where the taking possesssion and conversion is wrongful, no demand is necessary before bringing suit, for the wrongful taking and conversion is an assertion of ownership. (*Bilby* v. *Jones*, Okl. 136 Pac. 414.)

From the testimony of the witness Ellis, it is disclosed

that, upon instruction from the board of directors, he refused to transfer the stock when the same was presented by Hulse. It was immaterial as to whom Hulse might have requested the stock to be made out, or as to how the certificate was to be cut up. The conversion took place when the refusal was made to transfer the stock. This of itself constitutes an assertion of ownership on the part of the appellant corporation, acting through its instructed representative, the secretary. It is not contended that any different position would have been taken by the appellant corporation with reference to the transfer of the stock, had Hulse designated the names of the parties to whom the stock was to be made out.

[4] The findings of the trial court upon the facts presented by the evidence, in so far as that evidence is disclosed by the record, is in our judgment substantiated. If there is any conflict, it is our judgment that it is a conflict that is substantial, and it is a rule long since established by this court that, where there is a substantial conflict in the testimony, this court will not substitute its judgment for that of the trial court, and will only interfere when upon all of the evidence it is clear that a wrong conclusion has been reached. (*Watt* v. *Nev. Cen. R. R. Co.*, 23 Nev. 154, 44 Pac. 423, 46 Pac. 52, 726, 62 Am. St. Rep. 772; *Potosi Zinc Co.* v. *Mahoney, et al.*, 36 Nev. 390, 135 Pac. 1078.)

The testimony of Hulse and Fulmer and the entire transaction between them as related by the record is not entirely free from suspicion. On the other hand, the record fails to clear the appellant of suspicion. There are transactions set forth by the record on the part of both parties that demand careful scrutiny. However this may be, there is nothing in the record relative to the transaction between Hulse and Fulmer that would justify a court of review in saying that their testimony was utterly untrustworthy. In a case of this character it was the duty of the trial judge to determine from all the facts before him the truth or falsity of the testimony as

given by the respective parties and the several witnesses. In this respect it appears from the decision of the trial judge in the files of this case that he carefully considered everything applicable to the case as it was presented to him, and after a careful scrutiny said that he saw no reason why he should refuse to believe the evidence of Hulse and Fulmer, or that there was other than a *bona fide* transfer of the 21,500 shares of stock from Fulmer to Hulse prior to the demand made upon the appellant for the transfer of the stock upon its books. The trial judge having considered the testimony of Hulse and Fulmer worthy of credit, the evidence is sufficient to sustain the judgment. (*Pinschower, et al.,* v. *Hanks,* 18 Nev. 99, 1 Pac. 454.)

[5] In fixing the value of the stock at the time of conversion, the trial court determined on 40 cents per share. The appellant company, in its complaint, alleged that the stock of the company was worth 50 cents per share at the time of bringing suit. This allegation was not denied by respondent in his answer. The witness Hulse testified: "I could not get Robinson at that time [referring to the time of the refusal of appellant to transfer the stock] for less than 40 cents, except this large block of stock which I purchased at a smaller figure. * * * I had a few sales on at 40 cents."

This point has been settled by this court, and the rule established that in cases of this character the damages which necessarily follow from the wrongful act of conversion are the value of the property at the time of conversion, with legal interest from conversion to judgment. (*Boylan v. Huguet,* 8 Nev. 345; *Ward v. Carson R. Wood Co.,* 13 Nev. 44.)

[6] In furtherance of their motion for a new trial appellant sought to rely upon newly discovered evidence, and in support thereof they filed the affidavit of Denver S. Dickerson, president of the appellant corporation, supported by the affidavits of George Devecmon and Anthony Jurich.

It appears from the written decision of the trial court,

made a part of the record in this case, that the affiant Devecmon was a witness at the trial, and that the affiant Jurich had also been present during the trial, and had formerly been an attorney for the defendants. While the record does not bear this out in other respects than by the written decision of the trial judge, his remarks in that respect are not controverted, hence we assume that they are correct. Regardless of what may be stated in the affidavits of Jurich and Devecmon, the affidavit of D. S. Dickerson, representing the moving party, is the one that must be especially subject to scrutiny, because, to entitle a party to a new trial on the ground of newly discovered evidence, it must be shown by the moving party, or his representatives, that such evidence could not with reasonable diligence be discovered and produced at or during the trial. It must be shown that the same is true, and it is in the affidavit of the moving party that the facts must be set out showing the diligence used to procure such evidence.

The affidavit of the affiant Dickerson, after setting forth his official position as president of the corporation, sets forth: "That, prior to and during the trial of the above-entitled cause, he endeavored with all reasonable dilgence to assist the plaintiff in procuring evidence, and in ascertaining the facts out of which said controversy arose. That he has read the affidavit of Anthony Jurich, and that the contents thereof were not known to affiant prior to or during the trial of the said cause, and that he first learned of such facts set forth in said affidavit after the decision had been filed in said cause. Affiant further states that he could not have procured such testimony in time for the use thereof at the trial, nor with reasonable diligence could he have so procured it."

The declarations of diligence in this affidavit are mere conclusions, and set out no showing of diligence or facts from which diligence might be inferred. Where newly discovered evidence is asserted as grounds for a new trial, the affidavit of the moving party is the basic thing upon which a new trial may be granted, because it is in

that that a trial court must find the essential elements necessary to authorize it to act in granting a new trial, and, unless these essentials are set forth, the court is not warranted in disturbing the judgment. (*Ward* v. *Voris*, 117 Ind. 368, 20 N. E. 261.)

[7] If the witnesses from whom this newly discovered evidence is to be obtained were witnesses at the trial, or were present in court during the trial, their testimony if material, could have been procured by reasonable diligence. If they were really in possession of the facts set forth in their affidavit, inquiry on the part of the representatives of the appellant company would have disclosed these facts, and their testimony could have been produced at the trial. It has been held that a motion for a new trial on the grounds of newly discovered evidence is properly denied, where the proposed new witnesses were residents of the city where the trial was held, and one or both were present at the trial to the knowledge of the moving party, and their testimony, if material, could have been procured by reasonable diligence. (*Goodeve* v. *Thompson*, Or. 136 Pac. 670.)

[8] Moreover, the newly discovered evidence as set forth by the affidavits of the proposed witnesses in this case savors strongly of being impeaching in character. While the record before us as to the testimony given at the trial is not entirely complete, the trial judge was in a position to know whether or not it was true, and his refusal to grant a new trial, if the proposed newly discovered evidence was of an impeaching nature, was no abuse of discretion. (*Whise* v. *Whise*, 36 Nev. 16, 131 Pac. 967, 44 L. R. A. n. s. 689; *Armstrong* v. *Yakima Hotel Co.*, Wash. 135 Pac. 233.)

Moreover, the statements made by the affiant Dickerson, representing the moving party, to the effect "that he endeavored with all reasonable diligence to assist the appellant in procuring evidence, and ascertain the facts out of which such controversy arose," and, "nor with reasonable diligence could he have so procured it," are too general. This matter has been decided by the case

of *Pinschower, et. al.*, v. *Hanks, supra*, wherein this court said: "The acts performed by them [the moving party] should be particularly stated, so as to enable the court to determine whether the conclusions stated in the affidavit are supported by the facts. It is the duty of the litigant to be active and diligent in procuring the testimony upon which they rely to maintain their cause. Trials are not to be encouraged as experiments. A party is not allowed to present his case by piecemeal; to take a part of the facts first, and then, if he fails, apply for a new trial, and seek to strengthen his case by a statement of other facts which were reasonably within his power to present at the first trial. He must make diligent search and inquiry in advance of the trial, and be able to show, to the satisfaction of the court, that he used reasonable diligence."

Whatever may be said as to the peculiarities of the transactions on the part of the prevailing party to this judgment, or whatever may be said as to the peculiar attitude of the representatives of the appellant corporation relative to their refusal to transfer the stock when the same was presented by Hulse, the trial judge had opportunity to view the witnesses and observe their attitude upon the stand, and, unless the record brought to this court showed evidence which preponderated against his judgment, his determination of the case should not be interfered with.

In denying the motion for a new trial upon the ground of newly discovered evidence, it is our judgment that no error of law was committed, and there was no abuse of discretion.

It follows that the order of the trial court in refusing a new trial should be affirmed, and it is so ordered.