[No. 2109]

# N. B. TORP, LIZZIE REED, WALTER FRENCH, ROBIN FRENCH, AND EMMA ROBINSON, RESPONDENTS, *v.* J. H. CLEMONS, APPELLANT.

### [142 Pac. 1115]

1. NEW TRIAL— MOTION —SERVICE — FILING —TIME — EXTENSION— STATUTES.

    Though the provisions of Cutting's Compilation, sec. 3292, authorizing an enlargement of the time for service and filing of a motion for a new trial by stipulation of the parties, or on good cause shown, by the court or judge before whom the cause was tried, was not carried forward into the Revised Laws, yet where the parties stipulated for an extension of time beyond the ten days specified in Rev. Laws, sec. 5323, within which defendant might serve and file his notice of intention to move for a new trial, such stipulation was a waiver of plaintiff's right to object that the motion was not in time.

2. APPEAL AND ERROR—REVIEW—FINDINGS—CONFLICTING EVIDENCE.

    In a suit to establish and enforce a trust a finding of the existence of the trust, based on substantially conflicting evidence, will not be reversed on appeal.

3. TRUSTS—RESULTING TRUST—PERSONAL PROPERTY—EVIDENCE.

    In a suit to establish a resulting trust in corporate stock, evidence *held* insufficient to sustain a finding that the trust existed as to more than fifty shares of the stock.

4. WITNESSES — COMPETENCY — TRANSACTIONS WITH PERSON SINCE DECEASED.

    In a suit to declare and enforce a resulting trust as to corporate stock alleged to be held by defendant as trustee for plaintiff's testator, defendant was precluded by Rev. Laws, sec. 5419, from testifying as to any transactions between himself and testator.

5. WITNESSES — COMPETENCY — DISQUALIFICATION — TRANSACTIONS WITH PERSON·SINCE DECEASED.

    Rev. Laws, sec. 5419, disqualifying a witness to testify to any transactions between himself and a person since deceased, does not disqualify the witness to testify as to matters brought out by opposing witnesses outside the transaction and out of the presence and hearing of the person who had since died.

6. TROVER AND CONVERSION—DAMAGES—VALUE OF PROPERTY.

    In a suit to compel an alleged trustee to account for the value of corporate stock alleged to have been converted by him, plaintiff's measure of damages was the market value of the stock at the time of the conversion, and evidence of its value at a subsequent time, more than two years thereafter, was inadmissible and insufficiency on which to predicate judgment.

APPEAL from the Second Judicial District Court, Washoe County; *Thomas F. Moran*, Judge.

Suit by N. B. Torp and others against J. H. Clemons. From a judgment for plaintiffs, defendant appeals. **Reversed and remanded.**

*Summerfield & Richards,* for Appellant.

*Mack, Green & Heer,* for Respondents.

By the Court, McCARRAN, J.:

This is an action brought by N. B. Torp and others, claiming to be legatees under the last will and testament of J. B. Overton, against J. H. Clemons, named as executor of said will and residuary legatee of the estate of the said Overton, deceased.

The action was brought in the district court to set aside the decree of settlement of the first and final accounting of the executor, and to set aside the order of final distribution of the estate of J. B. Overton, as theretofore made and entered, and to compel J. H. Clemons, as executor of the will of J. B. Overton, deceased, to account for 160 shares of the preferred stock of the Oakland Traction Company and the avails thereof.

The court below, at the conclusion of the trial, found, among other things, that on or about the 13th day of December, 1907, J. B. Overton was the owner of and in possession of and transferred and delivered to the defendant Clemons 160 shares of the capital stock of the Oakland Traction Company, a corporation organized and existing under and by virtue of the laws of the State of California, and of the par value of $16,000; that said transfer was made to the said defendant in trust for the said J. B. Overton; that the defendant paid no consideration therefor, but then and there promised and agreed with the said J. B. Overton to hold said stock certificates, representing the same to the use and benefit of the said J. B. Overton, and to turn the same over to the said J. B. Overton upon demand. The court further found that demand was made by the said J. B. Overton to the defendant for the return of said stock, and that the defendant failed and refused to return the said stock

to the said Overton. The court further found that the said stock was wrongfully converted by the defendant Clemons to his own use on or about the 10th day of June, 1909, and that the market value thereof at said time was $90 per share, and that the total value of said stock, as converted, was at the time of the conversion, $14,400. Judgment was accordingly entered in favor of plaintiffs that the decree of settlement of the first and final accounting of the executor, and the order of final distribution of the estate of J. B. Overton, be vacated, annulled, and set aside. From the judgment and order refusing a new trial, appeal is taken.

It is the contention of respondent in this case that none of the grounds assigned as error can be considered by this court, for the reason that the statement upon appeal in this case does not contain assignments of error covering the same or any assignments of error whatsoever. It is our judgment, however, in this respect that a sufficient compliance with the statute appears, and the errors assigned and excepted to were duly presented and brought to the attention of the trial court on the motion for a new trial and are brought here in connection with and attached to the transcript on appeal.

[1] Respondents contend that the trial court had no jurisdictional authority to hear the motion for a new trial, for the reason that the notice of intention to move for a new trial was not served or filed within ten days after defendant had received notice of the decision of the court, as provided by section 5323 of the Revised Laws. It is disclosed by the record that stipulation was entered into by counsel for appellant and respondent as follows:

"It is hereby stipulated and agreed by and between the above-named plaintiffs and defendant named above that defendant may have until and including the 22d day of August, 1913, in which to serve and file his notice of intention to move for a new trial in the above-entitled action."

It is the contention of the respondents herein that, notwithstanding this stipulation, the court had no jurisdiction to hear the motion for a new trial. Under the old practice act (Comp. Laws 1873, sec. 1258; Cutting's

Compilation, sec. 3292), it was provided that the "several periods of time limited may be enlarged by the written agreement of the parties, or upon good cause shown by the court or judge before whom the cause was tried." This special provision appears to have been eliminated in the new code of civil procedure.

It is our judgment that, notwithstanding the change in procedure, as appears in the Revised Laws, the stipulation, as entered into in this case, was a waiver of objection on the part of the respondent.

[2] The evidence in support of a trust relation is, in our judgment, exceedingly conflicting, consisting, as it does, in most part of testimony of the relatives of beneficiaries under the will of Overton, whose testimony is principally as to the statements and declarations made by the deceased, Overton, relative to stock held by the appellant, Clemons. The testimony, as it is presented in the record, falls far short of binding conviction to our mind as to the existence of a trust between Clemons and Overton, but as there is a substantial conflict in the testimony, and there is some substantial evidence in support of the finding of a trust, the conclusion of the trial court in this respect, in view of the long-established rule of this court, will not be disturbed.

This case, however, presents another phase; *i. e.*, the amount of stock transferred from Overton to Clemons which became subject to the trust. The testimony of Mrs. W. H. French, as well as that of Mrs. Clara M. Willis, is to the effect that in their hearing and presence, on several different occasions, the deceased, Overton, made demand of appellant, Clemons, for the stock of the Oakland Traction Company, held by him, and in that connection a certain written demand was identified by the witness, Mrs. French, and introduced in evidence, the contents of which is as follows:

"Everett, Washington, June 10, 1909.

"Mr. J. H. Clemons, 404 So. Virginia St., Reno, Nevada —Dear Sir: I hereby make formal demand on you for return of 160 shares (160) of preferred stock of the Oakland Traction Company (or whatever its legal name may

be) of Oakland, California, the said stock having been placed in your hands in trust for me and subject to my demand at any time. I have asked you several times to send this stock to me and now make formal written demand that you deliver all of said stock properly indorsed to H. R. Willis, of Everett, Washington, for such disposition as I may direct.          J. B. Overton."

Two days prior to the date of this instrument, the deceased, Overton, wrote a letter in his own hand to the appellant, Clemons, which is as follows:

"Seattle, June 8, 1909.

"My Dear Jay: I will try and write' to you to try and get an answer from you to let me know how you are progressing in your suit defending the Oakland property. Who have you for a lawyer? All you can do is to defend it as your property, and is not liable for any of the deposits in any bank nor was not when you bought it. The sale was made before depositors had made any claim and the bank was claiming that the bank wak, was solvent, and there can be no lien on the stockholders' property until have complained in some court record. If they get a judgment against me, and not against your property, and a judgment against me don't amount to anything as I have no property and don't want any. If you could manage to spare me the traction stock it would make it easy for me, and I could help you some, and I need it very much. It was bought with my money, and if you could indorse it and send it to me I would be able to do something that would benefit both of us. I can't see and I hope you will have no difficulty in making it out. If you want anything from me, let me know, and I will try and respond.

"Lovingly yours,          J. B. Overton."

It is disclosed by the testimony of Mrs. French, at whose home, in the State of Washington, the deceased, Overton, lived for some years and was abiding in at the date of the instrument, that the eyesight of the deceased was very poor, and in that respect she testified that "he could not read very well. If we held a magnifying glass

for him he could see to read." This, together with his
own statement, as set forth in his letter to the appellant,
Clemons, wherein he states, "I cannot see and I hope you
will have no difficulty in making it out," indicates the
physical condition, and emphasizes the physical infirmi-
ties of the decedent at the time at which the written
demand purports to have been made, and this disclosure
makes it manifest that the deceased, Overton, was
unable to read the contents of the written demand, and
was therefore dependent upon others to read it for him.
The tenor and substance of the written demand, which
was admittedly typewritten by another, presents a strik-
ing contrast to the expressions in the letter written by
himself two days prior thereto.

By the testimony of the witness Whitehead, it is
disclosed that the deceased stated that the appellant,
Clemons, was his adopted son.

In his letter of June 8, addressed to the appellant,
Clemons, there is no mention of the number of shares of
stock owned, nor is there any expression from which one
might infer the existence of a trust or an obligation on
the part of Clemons to return the stock to the writer.
He says, "If you could manage to spare me the traction
stock it would make it easy for me and I could help you
some."

It is the contention of the appellant herein that, if any
trust relation existed between the deceased, Overton, and
appellant, it could not affect more than fifty shares of
stock of the Oakland Traction Company, and, in that
respect, the testimony of the witness Taylor, secretary
of the Oakland Traction Company, is especially pertinent.

The witness Taylor testified that on the 13th of
December, 1907, there were fifty shares of stock of the
Oakland Traction Company held by J. B. Overton. He
testified that that was the only stock then held by J. B.
Overton, and further testified that it was the only stock
transaction in which the name of J. B. Overton appeared
on the books of the corporation. The stock then held by
J. B. Overton was represented by a certificate No. 949;

that certificate having been issued to Overton June 2, 1907. The witness Taylor testified in his deposition that on the 13th of December, 1907, he, as secretary of the company, received an order from an agent of the company for 110 shares of preferred capital stock, to be issued to J. H. Clemons. He says:

"This paper I have before me is the ordinary blank used by the Realty Syndicate, dated December 13, 1907, and calls for the transfer from the holdings of the Realty Syndicate 110 shares of preferred capital stock of the Oakland Traction Company, to be issued to J. H. Clemons. With that was surrendered certificate 949 in the name of J. B. Overton, showing that 60 additional shares went to J. H. Clemons. The record shows that that was transferred—the 50 shares of Overton were transferred to Taylor, trustee, in order to get the 110 for Clemons, as there was only an actual issue of 60 additional shares; the 110 including the 50 from certificate 949. To facilitate business, the stock of the Realty Syndicate is in my name as trustee, and transfers are made back and forth."

At another place in his deposition, the witness Taylor says:

"The authority for transferring 60 additional shares at that time was the order signed by Mr. Chase, one of the agents of the company."

At another place the witness Taylor said:

"As secretary of the Oakland Traction Company, I was called upon to issue 110 shares of preferred stock to J. H. Clemons. Our sales that day were 60 shares. I called for the other 50 shares for the transfer, to make up the amount. I was given the certificate of J. B. Overton, No. 949, to make up the difference."

Testifying as to who was present at the time of the making of this transfer on December 13, 1907, the witness said:

"Q. (by Mr. Heer). From whom did you receive the certificate for the 50 shares? * * * A. I don't remember.

"Q. Was Mr. Overton present at the time you received it? A. No."

When interrogated as to who produced the certificate No. 949 for the 50 shares in the name of Overton, the witness Taylor testified:

"I don't remember whether it was a boy, or Mr. Chase, or a messenger who delivered this order. I have forgotten just who did bring it. We sold 60 shares, and the order called for 110, and I could not deliver without the balance of the stock coming through."

Relative to the consideration that passed at the time of the issuance of the stock, the witness Taylor testified:

"Q. (by Mr. Heer). Can you state whether or not any consideration passed to you for the transfer to Mr. Clemons or to the Realty Syndicate, of which you were trustee? A. There was consideration passed to the Realty Syndicate.

"Q. I have reference to the 50 shares only. A. No, no consideration in any way at all.

"Q. And by the 50 shares I mean the 50 shares that were transferred by Mr. Overton to you, that were at the same time transferred by you as trustee to Mr. Clemons? A. No consideration whatever."

Annexed to the deposition of the witness Taylor are the canceled certificates, representing the several stock transactions, in which the deceased, Overton, and the appellant, Clemons, appear on the books of the Oakland Traction Company.

Exhibit No. 1 is certificate No. 949, purporting to have been issued to J. B. Overton, and is for 50 shares of stock of the Oakland Traction Company.

Exhibit No. 2 is certificate No. 1386, purporting to have been issued to S. J. Taylor, trustee, and is for 50 shares of stock of the Oakland Traction Company.

Exhibit No. 3 is certificate No. 1387, purporting to have been issued to J. H. Clemons, and is for 110 shares of stock of the Oakland Traction Company.

From the testimony of the witness Taylor, as it appears in the record by deposition, certificate No. 1387, for 110 shares, was issued by him, as secretary, to J. H. Clemons on the 13th day of December, 1907, and the shares represented by that certificate consisted of 50 shares of stock

that day transferred from J. B. Overton to J. H. Clemons and 60 shares of stock that day sold by the Oakland Traction Company. There is nothing in the record from which it may be determined as to who was the purchaser of the additional 60 shares of stock from the Oakland Traction Company, but in view of the fact that certificate No. 1387, which represented the shares purchased and the shares transferred from Overton, was made out in favor of J. H. Clemons, it must be presumed that the latter was the purchaser of the additional 60 shares of stock. This is especially emphasized by the fact that the deceased, Overton, nowhere appears in the transaction with reference to the additional 60 shares of stock mentioned by the witness Taylor.

In his letter to appellant, the deceased, Overton, stated that the stock of the Oakland Traction Company, referred to in his letter, was purchased with his money. He nowhere gives expression as to the number of shares of stock to which he referred as having been purchased with his money. We find nothing in the record upon which the presumption might be based that Overton, either on the 13th of December, the date on which the transfer took place, or on any prior or subsequent time, was a party to any transaction involving shares of stock other than the 50 shares represented by certificate No. 949.

[3] We are unable to determine from the record, as it is before us, how the trial court arrived at the conclusion that 160 shares of stock should be accounted for by the appellant, Clemons. The combined number of shares represented by the several certificates, as disclosed by the record, taken in connection with the testimony of Secretary Taylor, amounts to but 110 shares, and, as we have already stated, we find no fact presented by the record from which even an inference might have been drawn that any of this stock became subject to trust, if a trust actually existed, save and except the 50 shares of stock originally represented by certificate No. 949 and transferred by Overton to appellant, Clemons, on the 13th day of December, 1907, and included in certificate No. 1387.

A modification of the judgment would be the order of this court were it not for the fact that the record presents an error which we deem most vital in view of the nature of the judgment and decree rendered.

[4] A number of assignments of error have been presented to this court by appellant, one of which charges the trial court with error in refusing to permit the appellant, Clemons, to testify; the action of the court in that respect being based on section 5419, Revised Laws. In view of the interpretation given to our statute in the several decisions by this court, the witness Clemons, appellant herein, was properly precluded from testifying as to matters and things pertaining to any transactions between himself and the deceased, Overton. (*Roney* v. *Buckland,* 4 Nev. 45; *In Re Estate of Millenovich,* 5 Nev. 161; *Vesey* v. *Benton,* 13 Nev. 284; *Gage* v. *Phillips,* 21 Nev. 150, 26 Pac. 60, 37 Am. St. Rep. 494; *Burgess* v. *Helm,* 24 Nev. 242, 51 Pac. 1025; *Schwartz* v. *Stock,* 26 Nev. 128, 65 Pac. 351.) In excluding the testimony of the witness, as to transactions between himself and a deceased person, three elements must concur and be apparent: First, the witness must belong to a class which the statute renders incompetent; second, the party against whom the testimony is to be offered must belong to a class protected by the statute; and, third, the testimony itself must be of a nature forbidden by the statute. It requires a concurrence of all these elements to preclude the witness from giving his testimony. (40 Cyc. p. 2263, and cases there cited.) This being true, the inquiry is in the case at bar: Was the witness Clemons precluded from testifying as to all matters referred to in the offer?

[5] However strictly the statute may operate in excluding witnesses from testifying with reference to transactions between themselves and deceased persons, it was not in our judgment intended to preclude a witness from testifying as to matters or things brought forth by opposing witnesses, which appear to be outside of the transaction and out of the presence and hearing of the deceased party. (40 Cyc. p. 2323.) If the offer

made by the appellant in this case had included such matters, it would have been error to exclude the testimony of appellant with reference thereto. It is our judgment, in view of the form of the offer and the substance of the same, the witness Clemons in this case was was properly precluded from testifying.

[6] It is contended by appellant that the court erred in fixing the value of the stock, as it did, at $90 per share. The only testimony appearing in the record, bearing upon the subject of the value of the converted stock, was that of the witness Taylor, secretary of the Oakland Traction Company, and in that respect he testified as follows:

"Q. Do you know the present market value of the preferred stock of the traction company? A. I think you can buy plenty of it for $92.50 a share at the present time—not plenty of it, but you can buy it at that price.

"Q. That is sort of negative testimony as to the value of it. Do you know the market value at the present time? A. I only know that I had to buy some for a friend of mine the other day, and I paid $92.50 a share for it."

The testimony referred to was objected to by counsel for appellant, and several grounds of objection specifically set forth and exception duly reserved. No other evidence was offered bearing upon this subject, and we are unable to determine, from the record before us, how the trial court fixed the value of the stock at $90 per share.

In the case of *Robinson M. Co.* v. *Riepe*, 37 Nev. 33, 138 Pac. 910, following former decisions of this court, we said: "This point has been settled by this court, and the rule established, that in cases of this character the damages which necessarily follow from the wrongful act of conversion are the value of the property at the time of conversion with legal interest from conversion to judgment. (*Boylan* v. *Huguet*, 8 Nev. 345; *Ward* v. *Carson R. Wood Co.*, 13 Nev. 44.)"

In our judgment the objection to the interrogatories

propounded, in response to which interrogatories the witness Taylor gave the answers as to the value of the shares at or about the date of his deposition, should have been sustained, inasmuch as the interrogatories propounded called for an answer fixing the value of the shares at the time of the taking of the deposition.

The value of the stock at the time of the conversion was the fact material to the issue. The time of conversion, if conversion took place at all, was more than two years prior to the date on which the witness Taylor fixed the value of the stock. So far as the record discloses, there was no fact established by the evidence produced in the case upon which the court could determine the value of the stock at the date of the conversion, and hence no fact was established upon which the court could be warranted in making the finding which it did make with reference to the value of the shares of stock affected by the trust. This was a vital element in the case inasmuch as it was made an issue by the pleadings.

There being no fact presented by the record in this case as it is before us from which the trial court could be warranted in entering the judgment and decree as it was entered either as to the number of shares of stock affected by the trust or as to the value of the stock at the time of the conversion it necessarily follows that the judgment must be reversed.

The judgment and order appealed from are reversed and the case remanded for a new trial.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.